# United States Court of Appeals for the Federal Circuit

---

**HOWARD L. TADLOCK, JR.,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1762

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-1160, Judge Joseph L. Toth.

---

Decided: July 15, 2021

---

CARL RICHARD HENNIES, Quinn Emanuel Urquhart & Sullivan, LLP, Houston, TX, argued for claimant-appellant. Also represented by WILLIAM ADAMS, MATTHEW A. TRAUPMAN, New York, NY.

RETA EMMA BEZAK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by JEFFREY B. CLARK, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.; BRIAN D. GRIFFIN, DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before NEWMAN, LINN, and CHEN, *Circuit Judges.*

LINN, *Circuit Judge.*

This case presents the question of whether and to what extent the United States Court of Appeals for Veterans Claims ("Veterans Court") may make findings of fact in the course of considering whether an error of the Board of Veterans Appeals ("Board") was prejudicial. Because the Veterans Court's jurisdiction to consider prejudicial error does not give it the right to make de novo findings of fact or otherwise resolve matters that are open to debate, we vacate the Veterans Court's determination that Howard L. Tadlock, Jr. ("Tadlock") is not entitled to presumptive service connection and remand for further proceedings consistent with this opinion.

## BACKGROUND

Tadlock served in the Army from 1982 until 2003, including service in the Persian Gulf. In 2010, he suffered a pulmonary embolism ("PE") that resulted in a heart attack. Tadlock sought presumptive service connection for the PE and the heart attack under 38 U.S.C. § 1117. Section 1117 provides for presumptive service connection for a "qualifying chronic disability" for veterans who served in the Persian Gulf War. 38 U.S.C. § 1117(a)(1)(A). A "qualifying chronic disability" is, inter alia,

> (2) . . . [A] chronic disability resulting from any of the following:
>
> > (A) An undiagnosed illness.
> >
> > (B) A medically unexplained chronic multi-symptom illness (such as a chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome) that is defined by a cluster of signs or symptoms.

> (C) Any diagnosed illness that the Secretary determines in regulations prescribed under subsection (d) warrants a presumption of service-connection.

*Id.* at § 1117(a)(2). The statute expressly requires the Secretary to "prescribe regulations to carry out this section," *id.* at § 1117(d)(1), including, inter alia, "[a] description of the illnesses for which compensation under this section may be paid," *id.* at § 1117(d)(2)(B). In a regulation implementing the statute, the Secretary of Veterans Affairs limited the definition of "a qualifying chronic disability" to one that, "[b]y history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis." 38 C.F.R. § 3.317(a)(ii).

After several rounds of examinations, appeals, and remands, Tadlock underwent a final medical examination conducted in July 2017 by a Veterans Affairs ("VA") physician ("examiner"). The examiner diagnosed Tadlock with a pulmonary embolism, noting that "Pulmonary Embolism (PE) is diagnosed and well documented by generally well accepted diagnostic procedure, that being pulmonary CT angiogram." *In re Tadlock*, No. 13-15 547, at \*9 (Bd. of Vet. App. 2019) ("*VA Op.*") (quoting VA examiner's opinion). The examiner explained that because Tadlock's PE "is diagnosed, it is not an undiagnosed illness." *Id.* The examiner also explained that Tadlock's PE was *not* "medically unexplained." *Id.* at 11. The examiner thus concluded that "[i]t is less likely as not that pulmonary embolism is related to his active service, to include exposure to environmental hazards in [] Southwest Asia during the Gulf War." J.A. 214.

The Board explicitly adopted the 2017 examiner's opinion and largely based its conclusion denying service connection on that opinion. *Id.* at 13. The Board ultimately held:

> [T]he pulmonary embolism has been competently and credibly associated with a known etiology and diagnosis, pulmonary embolism, and therefore service connection based on the law and regulations pertaining to undiagnosed illness incurred due to Persian Gulf service is not warranted.

*Id.* (citing 38 C.F.R. § 3.317). Neither the Board nor the examiner made any finding of fact that Tadlock's condition was not a "medically unexplained chronic multisymptom illness . . . defined by a cluster of signs or symptoms," colloquially referred to as a "MUCMI."

With the benefit of pro bono counsel, Tadlock appealed to the Veterans Court, arguing that the definition of a "qualifying chronic disability" in 38 C.F.R. § 3.317 necessarily conflicts with 38 U.S.C. § 1117. He contended that the statute expressly includes not only "an undiagnosed illness" *but also* a "medically unexplained chronic multisymptom illness," examples of which include *diagnosed* illnesses, "such as chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome." (definition added). *See* 38 U.S.C. § 1117(a)(2)(B).

The Veterans Court, in a single-judge memorandum decision by Judge Toth, agreed with Tadlock: "Since a MUCMI, by definition, must be a diagnosed illness, denying this claim because the veteran's illness is diagnosed was clearly erroneous." *Tadlock v. Wilkie*, No. 18-1160, 2019 WL 2707830, at *3 (Vet. App. June 29, 2019) ("*Veterans Court Op.*"). *See also id.* at *5 ("[T]he Board denied his claim in part because this PE was a diagnosed illness, and this Court found this basis erroneous.").

The Veterans Court went on, however, to find that the error was not prejudicial. The Veterans Court noted that both 38 U.S.C. § 1117 and 38 C.F.R. § 3.317 characterize a MUCMI as a condition "defined by a cluster of signs or symptoms." Without citation to any findings by the Board or the VA, the Veteran's Court found in the first instance

that "[t]he acute PE that [Tadlock] suffered nearly 10 years ago is not characterized by overlapping signs and symptoms and unique features such as pain, fatigue, and disproportional disability when compared with physical findings." *Id.* at 4. It therefore held that "any error in the Board decision regarding whether his diagnosed illness could count as a MUCMI is harmless." *Id.* On that basis, the Veteran's Court affirmed.

The Veterans Court granted Tadlock's subsequent motion for a panel decision. A split panel adopted the memorandum decision as the decision of the court. *Tadlock v. Wilkie*, 2020 WL 738550, at *1–2 (Vet. App. Feb. 14, 2020). In dissent, Judge Pietsch noted that "the Court, under a prejudicial error analysis, applied a provision that the Board did not apply and made factual findings that the Board did not make," characterizing this case as "the latest in a recent string of aggressive prejudicial error analyses" by the Veterans Court. *Id.* at *2. Judge Pietsch opined that the Veterans Court's decision was based "on a record not developed to answer" whether Tadlock's disability was a MUCMI, and "made medical findings despite its lack of medical competency." *Id.*

Tadlock timely appeals.

## DISCUSSION

### I

As a preliminary matter, the government argues that we do not have jurisdiction to review the Veterans Court's decision in this case because Tadlock's arguments on appeal require consideration of whether the Board's error was prejudicial, a factual determination outside this court's jurisdiction to review. *See Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007) ("*Newhouse II*") (holding that this court's jurisdiction does not allow considering appellant's "contentions regarding actual prejudice"); *Pitts v. Shinseki*, 700 F.3d 1279, 1286–87 (Fed. Cir. 2012)

(applying *Newhouse II* in a similar circumstance); *Conway v. Principi*, 353 F.3d 1369, 1375 (Fed. Cir. 2004) ("[T]he ultimate conclusion of the effect of the rule of prejudicial error on this case is beyond our jurisdiction"). The government proffers a rule that "when the Veterans Court has undertaken a review for prejudicial error and determined that an error is harmless, this court lacks jurisdiction to disturb that determination." *Appellee's Br.* at 13.

The government's proposed rule is overly broad and is expressly rejected. This court may review legal questions, including the validity of any statute or regulation or any interpretation thereof. 38 U.S.C. § 7292(c). "Whether the Veterans Court exceeded its jurisdiction is a question of law." *Sullivan v. McDonald*, 815 F.3d 786, 789 (Fed. Cir. 2016). This court routinely exercises jurisdiction to consider whether the Veterans Court exceeded its jurisdiction in making de novo fact-finding. *E.g.*, *id.* at 792–93 (rejecting the government's argument that determining whether the Veterans Court made an improper fact-finding in the first instance was outside this court's jurisdiction because it required a factual comparison between the Veterans Court's opinion and the Board's opinion); *Elkins v.* Gober, 229 F.3d 1369, 1377 (Fed. Cir. 2000); *Hensley v. West*, 212 F.3d 1255, 1265 (Fed. Cir. 2000) (holding that the Veterans Court's finding that a veteran's claim was not well-grounded was an improper de novo fact finding"). There is no basis for an exception to this well-settled rule in the case of a prejudicial error determination.

Tadlock's challenge here is not to the factual determination of the Veterans Court that his illness was not a MUCMI, but instead to the Veterans Court's authority to make that fact-determination in the first instance in its consideration of prejudicial error. Although we cannot review and do not here decide whether the Veterans Court was correct to hold that Tadlock's illness was not a MUCMI, we *can* review the question of law whether the Veterans Court exceeded its jurisdiction in making that

determination in the first instance.  Indeed, we made this distinction explicitly in *Newhouse II*.  497 F.3d at 1301–02 (first considering whether the Veterans Court exceeded its jurisdiction in violation of *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80 (1943), then holding that we could not consider the veterans challenge to the Veterans Court's factual determination of no actual prejudice).

We conclude that we have jurisdiction over this case under 38 U.S.C. § 7292(c).  We review the question of law regarding the Veterans Court's jurisdiction de novo. *Sullivan*, 815 F.3d at 789.

## II

## A

On the merits, Tadlock argues that the Veterans Court improperly engaged in de novo fact finding in making its determination of no prejudicial error.  He argues that his case is analogous to *Hensley* in which we held that the Veterans Court had exceeded its jurisdiction in finding no prejudicial error on an insufficiently developed factual record. He also argues that the Veterans Court violated *Chenery* by substituting a different rationale in support of its finding of no prejudicial error, citing *Mayfield v. Nicholson*, 444 F.3d 1328 (Fed. Cir. 2006).  The government argues in opposition that the Veterans Court was not only correct in reviewing the Board's decision for prejudicial error, but was required to do so, and that this analysis allows the Veterans Court to go outside the facts found by the Board, relying on *Mlechick v. Mansfield*, 503 F.3d 1340 (Fed. Cir. 2007) and *Newhouse II*.

## B

"The Court of Appeals for Veterans Claims shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals."  38 U.S.C. § 7252(a).  The Veterans Court's review is on "*the record of proceedings before the Secretary and the Board*" and "shall be limited to the scope

provided in section 7261 of this title." *Id.* at § 7252(b) (emphasis added). In authorizing such review, Congress expressly limited the Veterans Court's jurisdiction to exclude de novo fact-finding: "In no event shall findings of fact made by the Secretary or the Board of Veterans' Appeals be subject to trial de novo by the [Veterans] Court." 38 U.S.C.§ 7261(c). As we have recognized, the statute prohibits the court from making factual findings in the first instance." *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) (emphasis in original). "[F]act-finding in veterans cases is to be done by the expert [Board], not by the Veterans Court." *Elkin*s, 229 F.3d at 1377. "The statutory provisions are consistent with the general rule that appellate tribunals are not appropriate fora for initial fact finding." *Hensley*, 212 F.3d at 1263 (observing that "[a]ppellate courts can 'review' only that which has happened in the past"). *See also id.* (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986) for the proposition that appellate courts "should not simply [make] factual findings on [their] own").

While the Veterans Court is also empowered to "hold unlawful and set aside or reverse [a finding of material fact adverse to the claimant] if the finding is clearly erroneous," 38 U.S.C. § 7261(a)(4), a determination by the Veterans Court that the Board clearly erred in making a fact finding is quite different from the Veterans Court finding facts in the first instance. The former is statutorily authorized by § 7261(a)(4). The latter is statutorily foreclosed by § 7261(c) (prohibiting "trial de novo by the Court"). As we stated in *Deloach*: "The Court of Appeals for Veterans Claims, [even] as part of its clear error review, must *review* the Board's weighing of the evidence; it may not weigh any evidence itself." 704 F.3d at 1380 (emphasis in original).

C

The Veterans Court, in deciding all cases before it, is also statutorily charged with taking "due account of the

rule of prejudicial error." 38 U.S.C. § 7261(b). *Conway*, 353 F.3d at 1375 ("[W]e establish today that the Veterans Court must 'take due account of the rule of prejudicial error' in all cases addressing the notice requirements in section 5103(a)."). In reviewing the Board's decision for prejudicial error, the Veterans Court is not limited to considering only the facts relied on by the Board and the VA but can—and indeed must—consult the full agency record, including facts and determinations that could support an alternative ground for affirmance. *Newhouse II*, 497 F.3d at 1302 ("The [prejudicial error] statute does not limit the Veterans Court's inquiry to the facts as found by the Board, but rather requires the Veterans Court to 'review the record of the proceedings before the Secretary and the Board' in determining whether a VA error is prejudicial" (quoting 38 U.S.C. § 7261(b)(2)); *Mlechick*, 503 F.3d at 1345 ("That statutory obligation permits the Veterans Court to go outside of the facts as found by the Board to determine whether an error was prejudicial by reviewing 'the record of the proceedings before the Secretary and the Board'" (quoting *Newhouse II*, 497 F.3d at 1302)).

In *Newhouse v. Nicholson*, 21 Vet. App. 65 at \*5 (2006) (unpublished) ("*Newhouse I*"), the Veterans Court determined that the VA failed to provide Newhouse proper notice of the evidence he needed to submit to substantiate his claims. Newhouse alleged that with the required notice, he would have resubmitted a July 1985 examination or would have sought additional audiology examination to substantiate his claim, and that the proper course for the Veterans Court was to vacate the Board's denial of benefits and remand. *Id.* at \*4. The Veterans Court disagreed because it determined that the notice deficiency was not prejudicial because Newhouse "could not have been prejudiced" by the notice error because the July 1985 report was already in the record, and Newhouse had already requested additional VA audiological evaluations. *Id.* There was thus no space for the possibility of actual prejudice.

This court, without considering whether Newhouse was actually prejudiced, endorsed the Veterans Court's prejudicial error analysis, noting that the "[t]he statute does not limit the Veterans Court's inquiry to the facts as found by the Board, but rather requires the Veterans court to 'review the record of the proceedings before the Secretary and the Board' in determining whether the VA error is prejudicial." *Newhouse II*, 497 F.3d at 1302 (quoting 38 U.S.C. § 7261(b)(2)). The Veterans Court did not violate *Chenery* by affirming on a different ground than the Board because the Veterans Court was statutorily empowered and required to consider whether the VA's error was prejudicial. *Id.* Reaffirming *Newhouse II*, this court in *Mlechick* held that the Veterans Court may not simply refuse to consider whether a notice failure was prejudicial to the veteran and, instead, must consider the "the entire 'record of the proceedings before the Secretary and the Board' in determining whether an error was nonprejudicial." 503 F.3d at 1345 (quoting *Newhouse II*, 497 F.3d at 1302).

The government relies on *Newhouse II* and *Mlechick* for the broad proposition that prejudicial error review allows—indeed, requires—the Veterans Court to consider whether the Board's error was prejudicial based on the record, unfettered by the particular fact-findings made by the VA or the Board. The government's argument is overstated and its reliance on these cases is misplaced. The Veterans Court's decision in *Newhouse I* was based on a determination that the record *unquestionably* revealed no prejudice from the VA's notice error: the 1985 letter Newhouse alleged he would have submitted with proper notice was already in the record, and he had already requested the audiological examinations he alleged he would have sought with proper notice. 21 Vet. App. 65, at *5 ("[T]he appellant could not have been prejudiced by such notice."). The Veterans Court thus did not need to make a factual determination that was open to debate in the first instance. Moreover, there is no indication in *Newhouse II* that the

veteran even argued that the Veterans Court's affirmance was based on new fact-findings.   497 F.3d at 1301–02. *Newhouse II* thus does not support the government's position.

*Mlechick* also does not support the government's position.  At best, both *Newhouse II* and *Mlechick* expressly and correctly recognized that the prejudicial error analysis must be performed in every case and must be done so on the record made before the agency.  *Newhouse II*, 497 F.3d at 1301 ("[T]he Veterans Court was required to examine whether any errors by VA were prejudicial and *[] it must do so based on the administrative record*" (emphasis added)); *Mlechick*, 503 F.3d at 1345 ("The statutory obligation [to consider prejudicial error] permits the Veterans Court to go outside of the facts as found by the Board to determine whether an error was prejudicial by reviewing '*the record of the proceedings before the Secretary and the Board*'" (quoting *Newhouse II*, 497 F.3d at 1302) (emphasis added)).  While "the record of the proceedings before the Secretary and the Board" is broader than "the facts as found by the Board," nothing in either case, however, requires or even suggests that considering the "record of the proceedings" authorizes the Veterans Court to make findings of fact in the first instance.

In *Shinseki v. Sanders*, the Supreme Court explained that the Veterans Court prejudicial error mandate "requires the Veterans Court to apply the same kind of 'harmless error' rule that courts ordinarily apply in civil cases" and when reviewing agency action under the Administrative Procedure Act ("APA").  556 U.S. 396, 406 (2009).  In reviewing agency action under the APA, "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Pwr. & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).  This review is limited to "the administrative record already in existence, not some new record made initially in the

reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The appellate courts "should not simply . . . [make] factual findings on [their] own." Icicle Seafoods, 475 U.S. at 714.

Tadlock relies on Mayfield in arguing that the Veterans Court exceeded its jurisdiction by affirming on a ground other than the VA's stated ground. In that case, the Veterans Court concluded that Mayfield did not receive adequate notice under the Veterans Claims Assistance Act ("VCAA") via a series of statements and decisions that occurred *after* an initial decision by the VA but were statutorily required to be provided before such a decision. 444 F.3d at 1334. Rather than remand, the Veterans Court held that a 2001 letter provided the necessary notice and therefore affirmed the Board's denial of service connection. *Id.* On appeal, we held that "the Veterans Court would have been in a position to decide whether the insufficiency in the notice was prejudicial" only if the Board "had considered the March 15, 2001, notice and found it sufficient, and if the Veterans Court had ruled that the March 15, 2001, notice was insufficient." *Mayfield*, 444 F.3d at 1337. Because the Board had not considered the March 15, 2001 letter, the Veterans Court could not affirm on prejudicial error grounds based on that letter. *Id.*

D

Notwithstanding the foregoing, the Veterans Court may affirm on a ground not considered by the Board and the VA if it is clear that the factual basis for such conclusion is not open to debate and the Board on remand could not have reached any other determination on that issue. *See Mayfield*, 444 F.3d at 1336 ("[T]his case is not one in which we can conclude that there was no violation of the *Chenery* doctrine on the ground that 'it is clear that . . . the agency would have reached the same ultimate result under the court's legal theory'" (alteration in original) (quoting *Grabis v. Office of Pers. Mgmt.*, 424 F.3d 1265, 1270 (Fed. Cir. 2015)); *Fleshman v. West*, 138 F.3d 1429, 1433 (Fed.

Cir. 1998) (affirming Veterans Court's affirmance on a different legal rubric because "it seems clear to us that the agency would have reached the same conclusion if it had addressed the legal issue on which the Court of Veterans Appeals rested its judgment"). This is consistent with appellate review in APA cases. *See, e.g.*, *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969) (affirming agency action where "remand would be an idle and useless formality" because "the substance of the Board's command is not seriously contestable" and "there is not the slightest uncertainty as to the outcome of a proceeding before the Board"); *Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1100–01 (Fed. Cir. 1996) (holding that *Chenery* was inapplicable to require remand where the court "would have had no choice but to reverse" a contrary ruling). *But see, e.g.*, *Ventura v. INS*, 264 F.3d 1150, 1157 (9th Cir. 2001) (declining to remand a question to the Board of Immigration Appeals ("BIA") because "it is clear that we would be compelled to reverse the BIA's decision if the BIA decided the matter against the applicant"), *rev'd*, 537 U.S. 12, 16 (2002) (requiring remand and noting that appellate courts generally cannot make de novo fact findings on "a matter that statutes place primarily in agency hands").

E

It is well-settled that the veterans' benefits system is intended to be pro-veteran. *Henderson v. Shinseki*, 562 U.S. 428, 440–41 (2011). That does not mean, however, that the processing and resolution of a claim filed by a veteran should be open-ended and never-ending. To the contrary, it is in the interests of both the veteran and the government that all claims be brought to a full, just, prompt and efficient conclusion. To obviate unnecessary remands and unnecessarily protracted proceedings, Congress, while otherwise broadly supporting the rights of veterans, statutorily mandated consideration of prejudicial error in the determination of appeals before the Veterans Court. But obviating unnecessarily protracted proceedings

does not suggest that Congress intended to override the statutory constraint imposed on the Veterans Court not to engage in de novo fact finding. When questions of fact are open to debate, veterans are entitled to present whatever evidence and arguments they have to the agency charged with administering veterans' benefits and possessed with the expertise to render informed judgments and to have that evidence and those arguments considered by that agency in the first instance. "The rule of harmless error cannot be invoked to allow the Court of Appeals for Veterans Claims to decide a matter that is assigned by statute to the [VA] for the initial determination," nor can the rule be invoked to support an affirmance that "may [] have required it to make improper de novo findings of fact." *Winters v. Gober*, 219 F.3d 1375, 1380 (Fed. Cir. 2000); *Deloach*, 704 F.3d at 1381 ("[W]hen the Board misinterprets the law and fails to make the relevant initial factual findings, 'the proper course for the Court of Appeals for Veterans Claims is to remand the case to the Board for further development and application of the correct law'" (quoting *Byron v. Shinseki*, 670 F.3d 1202, 1205 (Fed. Cir. 2012))).

For the above reasons, we hold that § 7261(b)'s command that the Veterans Court "give due account of the rule of prejudicial error" does not give it the right to make de novo findings of fact or otherwise resolve matters that are open to debate. Affirmance in the face of an error may be made by the Veterans Court only if the record already contains findings made previously by the VA or the Board that support affirmance or the entire record makes evident that the Board could not have reached any other decision. Where additional findings of fact are necessary regarding matters open to debate, the proper action for the Veterans Court is to remand to the Board for consideration of those facts in the first instance.

## III

### A

Turning to the present case, the determination of whether an illness is "defined by a cluster of signs or symptoms," 38 U.S.C. § 1117(a)(2)(B), is a question of fact delegated to the VA. 38 U.S.C. § 1117(a)(1) ("*The Secretary* may pay compensation under this subchapter to a Persian Gulf veteran with a qualifying chronic disability" (emphasis added)); *Goodman v. Shulkin*, 870 F.3d 1383, 1388 (Fed. Cir. 2017) ("[I]n individual MUCMI determinations, *the VA adjudicator* may consider evidence of medical expert opinions and all other facts of record to make the final determination of whether a claimant has proven, based on the claimant's unique symptoms, the existence of a MUCMI" (emphasis added)). Such fact-finding is delegated to the VA for consideration in the first instance.

Neither the Board nor the VA here considered whether Tadlock's condition was characterized by overlapping symptoms or signs. Rather, the Board's decision denied service connection for Tadlock's PE because his PE had *a diagnosis and etiology*, and thus did not qualify as an MUCMI under 38 C.F.R. § 3.317(a)(1)(ii). *Tadlock*, 2019 WL 2707830, at *2 (discussing Board and examiner decisions). Because of this holding, neither the Board nor the VA had cause to consider whether Tadlock could satisfy the alternative prong for presumptive service connection under 38 U.S.C. § 1117: that he suffered from "a medically unexplained chronic multisymptom illness (such as chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome) that is *defined by a cluster of signs or symptoms*." (emphasis added).

Because "a MUCMI, by definition, must be a diagnosed illness," the Veterans Court held that the VA's denial of presumptive service connection was clearly erroneous. *Tadlock*, 2019 WL 2707830, at *2. It affirmed only by determining, in the first instance, that "Tadlock has not

identified, any overlapping symptoms or signs related to his PE or any other features of his condition that would suggest it as a MUCMI." *Veterans Court Op.* at 4. The Veterans Court did not cite any fact-finding by the Board or by the VA examiner and the record does not show such a determination by the VA examiner or the Board.[1] Indeed, the government readily admits that "the [B]oard had not addressed whether Mr. Tadlock's PE met the additional [cluster of signs or symptoms] criteria to be considered a MUCMI." *Appellee's Br.* at 21; *Id.* at 22 ("Here, the board did not address the specific issue of whether Mr. Tadlock's PE was characterized by overlapping signs and symptoms and had features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities."). The determination that Tadlock's symptoms did not constitute a MUCMI because they did not feature such overlapping signs or symptoms was thus the Veterans Court's alone.

B

We agree with Tadlock that this case is substantially similar to *Hensley*. In *Hensley*, a veteran was awarded presumptive service under 38 C.F.R. § 3.316(a) for lung disease due to exposure to mustard gas during World War II. 212 F.3d at 1256. Hensley later sought service connection for heart disease—which was not included in the presumptive service connection list in § 3.316—as a secondary disability based on that lung disease. *Id.* at 1257. To link his heart and lung disease, Hensley submitted three personal medical reports and a VA report, all indicating a possible

---

[1]    There is no dispute here that whether Tadlock's conditions is a MUCMI is a question of fact. *See Gov't Br.* at 12 ("This is a factual determination or, at most, an application of law to facts."); *Veterans Court Op.*, 2019 WL 2707830 at *2.

connection between heart disease and toxic gas exposure. *Id.*

The Board held that Hensley's claim for secondary service connection was not well-grounded because the absence of heart disease in the regulation precluded presumptive service connection for heart disease through a secondary disability route. *Id.* The Board therefore did not consider the reports Hensley submitted. *Id.* On appeal, the Veterans Court held that the Board's construction was erroneous because the absence of heart disease in the regulation did not preclude service connection for heart disease as a secondary disability. *Id.* at 1258. Nevertheless, the Veterans Court affirmed the Board's holding that Hensley claim was not well-grounded after analyzing the reports in the first instance to conclude that Hensley failed to establish a nexus between his heart disease and his exposure to mustard gas during service. *Id.* *See also Hensley v. West*, 16 Vet. App. 284 at *3–5 (1998) (Table).

On appeal, this court held that the Veterans Court had exceeded its jurisdiction. We explained that "[a]s a consequence of [the Board's erroneous determination with respect to the interpretation of 38 C.F.R. § 3.316(a)], the [Board] did not consider the surrounding facts or the merits of the case that they might support." *Hensley*, 212 F.3d at 1264. We further explained that the Veterans Court could not affirm based on the reports in the first instance because it would improperly require the Veterans Court to "review '*de novo*' the [Board's] determination of well-groundedness." *Id.* at 1264. Because the Board did not consider or analyze the reports as a result of its legal error, the Board's decision led to "an insufficient factual development of the record" on well-groundedness, and "the proper course for the Court of Appeals for Veterans Claims would have been to remand the case to the [Board] for further development and application of the correct law." *Id.*

This court applied *Hensley* in *Elkin*s. There, a veteran sought service connection for a headache condition due to a car accident in service. *Id.* at 1371. The VA denied his claim and the Board affirmed, holding that Elkins had failed to submit a well-grounded claim because he did not provide competent medical evidence of a current headache condition. *Id.* at 1372. The Veterans Court held that the Board had clearly erred in this determination and that Elkins had indeed provided sufficient medical evidence of a current headache condition. *Id.* at 1377. Nevertheless, the Veterans Court affirmed, finding a lack of evidence of nexus between the headache condition and Elkins's service based on its own initial review. *Id.* Relying on *Hensley*, we held that this was error because the Veterans Court's affirmance "involve[d] finding facts in the first instance." *Id.*

Like the Veterans Court's determinations of well-groundedness in *Hensley* and *Elkins*, the Veterans Court here sought to consider in the first instance whether Tadlock's symptoms constituted a MUCMI, an inquiry delegated to the VA. As noted above, the Veterans court did not cite to anything in the record to support its determination, nor did it contend that its determination was the only possible outcome within the discretion of the VA and the Board. The proper course for the Veterans Court here was thus to vacate and remand for consideration by the VA or the Board in the first instance about whether Tadlock's illness might be "defined by a cluster of signs or symptoms" characteristic of a MUCMI.

The government attempts to distinguish Hensley and Elkins as based not on prejudicial error but clear error. What the government overlooks is that in each of *Hensley* and *Elkins*, the Veterans Court not only held that the Board's denial of benefits was based on clear error, but went on to affirm for lack of prejudice on other grounds requiring additional fact finding. Indeed, in *Hensley*, we stated: "The Court of Appeals for Veterans Claims then held that the [Board's] error was therefore not prejudicial

to Mr. Hensley," 212 F.3d at 1258, a conclusion that we vacated as improperly dependent on fact-finding in the first instance. There is no basis to distinguish this case from *Hensley* and *Elkins*.

## C

Finally, the government argues that the Veterans Court's determination that Tadlock's condition was not a MUCMI was not based on its finding of facts in the first instance but was based "entirely on factual determinations made by the board" and that the "factual record here was sufficient." *Appellee's Br.* at 30 (citing *Veterans Court Op.*, 2019 WL 2707830 at \*3, *Fleshman*, 138 F.3d 1429, and *Mayfield*, 444 F.3d at 1335); *id.* at 25. The government asserts that the Board "specifically noted that the PE was diagnosed and that it was not medically unexplained, and so it could not serve as the basis for a grant of service connection." *Id.* at 25. This argument is inexplicable. As the government immediately thereafter recognizes, the Veterans Court found that determination to be clearly erroneous. *Id.* The basis for prejudicial error cannot be the identical determination the Veterans Court found to be erroneous. Contrary to the government's argument, we agree with Judge Pietsch's observation that the Veterans Court "applied a provision that the Board did not apply and made factual findings that the Board did not make." *Tadlock*, 2020 WL 738550, at \*2 (Pietsch, J., dissenting). Moreover, as noted above, the government admits that the Board did not rule on whether Tadlock's condition was characterized by overlapping symptoms or signs.

## CONCLUSION

For the reasons discussed above, the Veterans Court exceeded its authority in making a fact finding in the first instance that Tadlock's illness did not qualify as a MUCMI because of a lack of overlapping symptoms. We thus vacate

the decision of the Veterans Court and remand for further proceedings consistent with this opinion.[2]

## VACATED AND REMANDED

### COSTS

Each party shall bear its own costs.

---

[2]    The Veterans Court's decision expressly avoided the question of whether 38 C.F.R. § 3.317(a)(1)(ii) is invalid as contradictory to its authorizing statute, 38 U.S.C. § 1117. *Veterans Court Op.*, 2019 WL 2707830 at *3 (holding that "any inconsistency the veteran perceives between the definitions of qualifying chronic disability in the statute and the implementing regulation is immaterial to the circumstances of his appeal" because "Tadlock's disability still doesn't exhibit the characteristics and features of a MUCMI" in the statute itself).  Because the validity of 38 C.F.R. § 3.317(a)(1)(ii) was not addressed by the Veterans Court, we need not and do not consider it in this appeal.