# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-5454

ROGER W. WIKER, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 16, 2023)                                    Decided May 12, 2023)

*Amy F. Odom*, with whom David J. Giza and Zachary M. Stolz, all of Providence, Rhode Island, were on the brief, for the appellant.

*Mark J. Hamel*, with whom *Catherine C. Mitrano*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *James B. Cowden*, Deputy Chief Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before ALLEN, FALVEY, and JAQUITH, *Judges*.

FALVEY, *Judge*: If VA denies your claim, but the notice it gives you doesn't tell you that, is that notice sound? Even if the answer to this question seems obvious, getting to that answer requires us to navigate through long-gone regulations and past zombie precedent we thought slain by the Supreme Court. At the end of this voyage, we still reach the expected destination and conclude that such notice is inadequate.

This appeal comes to us from a July 1, 2021, Board of Veterans' Appeals decision that denied an effective date before April 12, 2007, for left eye blindness. Assisted by counsel, Navy veteran Roger W. Wiker appeals that decision, arguing, among other things, that the Board erred in finding that VA fulfilled its duty to notify him about a January 1965 rating decision denying service connection for cataracts and that the decision thus never became final. His appeal is timely and within our jurisdiction. 38 U.S.C. §§ 7252(a), 7266(a).

Under the principles laid out in *Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990), this matter was referred to a panel, with oral argument,[1] of this Court to address whether VA's

---

[1] Cornell Law School hosted oral argument. The Court thanks the school for its hospitality.

communications to Mr. Wiker satisfied the notice regulations effective in 1965 and, if not, whether any exceptions—such as an actual knowledge or a reasonable person exception—render any VA notice error harmless.

As we explain, we hold that VA failed to give Mr. Wiker proper notice because the January 1965 initial notice didn't tell him that VA denied service connection for cataracts. As for the actual knowledge exception, although we hold that it can apply in this context, we find that the evidence relied on by the Board fails to show that Mr. Wiker knew that he could appeal VA's October 1965 corrective notice or that he knew his deadline to file such an appeal. And as for the reasonable person exception, even if we assume that it could apply here, the differences between VA's initial notice and the corrective notice would not let a reasonable person know that the denial could be appealed or what the time limit was for doing so. Thus, we hold that Mr. Wiker's appeal never became final, reverse the Board's contrary determinations, and remand this claim for the Board to consider the correct effective date based on the 1964 claim.

## I. BACKGROUND

Mr. Wiker served on active duty from August 1962 to July 1964. Record (R.) at 3334. In April 1964, a Navy physical evaluation board found that he was unfit to perform his duties because he had bilateral cataracts and amblyopia. R. at 4108. Soon after his discharge, Mr. Wiker filed his December 1964 claim for cataracts. R. at 4848-49. In January 1965, the regional office (RO) issued a rating decision that denied service connection for cataracts, finding that the condition was congenital and there was no evidence of eye trauma or infection. R. at 4837-38. But VA never sent that decision to Mr. Wiker. R. at 7.

The only notice Mr. Wiker got was a January 1965 letter stating that VA had *granted* service connection for cataracts but that the condition was rated as noncompensable. R. at 4830. The letter also informed him of his right to appeal to the Board by filing a Notice of Disagreement (NOD) within one year of the letter. *Id.* And Mr. Wiker tried to do just that.

In September 1965, attorney Harris C. Arnold, Jr., sent a letter to VA, stating that Mr. Wiker had contacted him about the cataract claim and that the veteran wished to appeal "the determination that the disability is less th[a]n 10%." R. at 4826-28. In response, VA sent Mr. Arnold a letter in October 1965 telling him that he could not represent Mr. Wiker before VA because he had not "been recognized as an attorney or agent." R. at 2551. The letter also said that,

because Mr. Arnold had not been recognized as an attorney or agent, VA could not accept his September 1965 letter as an NOD. *Id.*

That same day, VA also sent Mr. Wiker a letter informing him that the part of the January 1965 VA letter "which stated that service connect[ion] had been established for cataracts was completely in error" and that service connection had in fact been denied. R. at 2552. This October 1965 letter said nothing about appellate rights or that Mr. Arnold was not recognized as an attorney or agent able to practice before VA and that VA had rejected the September 1965 NOD. *See id.* Neither Mr. Wiker nor Mr. Arnold appear to have responded to the October 1965 VA letters.

A few years later, Mr. Wiker tried again to get benefits for his eye disability. And, in June 1973, he again applied for service connection for bilateral cataracts. R. at 4703-06. But, that same month, the RO notified him that his previous claim had been denied in January 1965 and that VA would take no further action on his claim because he had not submitted "new substantiating evidence." R. at 4702.

Decades later, in April 2007, Mr. Wiker again requested VA benefits, stating that he was legally blind and had suffered a stroke in March 2004. R. 4644-60. Only this time, he succeeded and the RO granted service connection for left eye blindness due to a cataract with an effective date of March 23, 2011. R. at 4179-82. Mr. Wiker disagreed with this effective date. He appealed, seeking an earlier effective date, including based on the January 1965 rating decision.

This eventually brought him to a May 2019 Board decision. The Board granted the left eye blindness claim effective April 2007, but no earlier. R. at 995, 1000-02. Even as the Board agreed with Mr. Wiker that the January 1965 VA notification letter was "incorrect and thus confusing," it found that the error was cured by the October 1965 VA letter. R. at 999.

The Board also decided that Mr. Arnold's September 1965 letter was not a valid NOD because Mr. Arnold was not recognized by VA as an attorney or agent, that VA informed both Mr. Wiker and Mr. Arnold that it had rejected the attempted September 1965 NOD, and that Mr. Wiker never filed a valid NOD challenging the January 1965 rating decision. *Id.* From this, the Board concluded that Mr. Wiker "did not appeal the January 1965 decision"; that the decision "became final one year after he was notified of the decision in October 1965"; and, "as finality attaches, the claim has not remained silently pending over the years." *Id.* Similarly, the Board found that the RO had properly denied the June 1973 request to reopen and that the decision had also become final. R. at 999-1000. Undeterred, Mr. Wiker appealed to this Court.

3

In an October 2020 single-judge decision, we set aside the May 2019 Board decision and remanded the left eye blindness claim. R. at 200-08; *Wiker v. Wilkie*, No. 19-3685, 2020 WL 6110146 (Vet. App. Oct. 16, 2020). We found that, among other issues, the Board needed to address whether VA had provided Mr. Wiker with adequate notice of the January 1965 decision. R. at 205. We also instructed the Board to consider whether the veteran had actual notice of all information required to be furnished under the relevant notice regulations and, if so, whether this cured any notice defect. R. at 206.

As instructed, the Board issued a new decision in July 2021. In it, the Board again denied an effective date before April 2007 for left eye blindness. R. at 5. The Board stated that "[i]t does not appear that a copy of the [January 1965] rating decision itself was sent to the [v]eteran." R. at 7. Even so, the Board found that VA had properly notified Mr. Wiker of the January 1965 rating decision and even if VA's notice were defective, this defect was cured by Mr. Wiker's actual knowledge of the denial and of his appellate rights. R. at 10-13. What's more, the Board found that a reasonable person would have known of the denial and the corresponding appellate rights. R. at 10-13 (citing *Sanders v. Nicholson*, 487 F.3d 881, 889 (Fed. Cir. 2007), *rev'd sub nom. Shinseki v. Sanders*, 556 U.S. 396 (2009), as the basis for the "reasonable person" exception). From this, the Board concluded that the December 1964 cataracts claim had been finally adjudicated. *Id.*

## II. ANALYSIS

When a veteran files a claim for VA benefits, the claim remains open until it is finally adjudicated. *Hanson v. Brown*, 9 Vet.App. 29, 31 (1996). Generally, if a veteran does not appeal an RO decision, the decision becomes final. *See Cook v. Principi*, 318 F.3d 1334, 1336 (Fed. Cir. 2002) (en banc). But if a claimant has not been properly notified of the decision, it does not become final and the claim remains open. *Best v. Brown*, 10 Vet.App. 322, 325 (1997) (finding that VA's failure to comply with notice requirements prevented a rating decision from becoming final). Mr. Wiker relies on this to argue for an earlier effective date. Appellant's Brief (Br.) at 11-18.

As he sees it, the January 1965 rating decision never became final because VA did not send him proper notice, so his effective date should stem from that pending and unadjudicated December 1964 cataracts claim. This is because the effective date for a claim depends partly on when the claim was filed. By default, this date is the date of application or when the disability first arose, whichever is later. 38 C.F.R. § 3.400 (2022). And if a veteran applies within a year of

4

leaving service, the effective date can be the later of when the disability first arose or the first day after discharge. 38 C.F.R. § 3.400(b)(2). That is the effective date Mr. Wiker ultimately wants—the day after he left service.

As with other findings of fact, we review the Board's effective date findings under the deferential "clearly erroneous" standard. *Canady v. Nicholson*, 20 Vet.App. 393, 398 (2006). "'A finding is "clearly erroneous" when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). At the same time, we give no deference to the Board's legal determinations such as what notice VA needed to provide to Mr. Wiker; we review questions of law de novo. *Marsh v. Nicholson*, 19 Vet.App. 381, 387 (2005).

This distinction matters because the Secretary builds his defense on his contention that the Board's factual findings about notice are plausible, meaning that they are not clearly erroneous and should be affirmed. The problem is that this skips past the threshold question of what notice the law requires. That is a legal question that we review with no deference to the Board. Once we know what the law requires, we put on our deferential clear-error glasses to review factual questions about what the notice here said and what Mr. Wiker knew based on that notice. And even through those lenses, some of the Board's factual findings end up falling as clearly erroneous. With these standards of review in mind, we turn to Mr. Wiker's arguments.

### A. Notice Requirements and the Notice Given

We start with Mr. Wiker's contention that VA violated the notice requirements. Under the 1964 version of § 3.103, VA had to notify a claimant "of any decision authorizing the payment of benefit or disallowance of a claim." 38 C.F.R. § 3.103 (1964).[2] This notice had to "include the reason for the decision, the claimant's right to initiate an appeal by filing a notice of disagreement and the time limits within which such notice may be filed." *Id*.

VA also had notice requirements in 38 C.F.R. § 19.109(a). This regulation required that VA inform a claimant of the right to launch an appeal by filing an NOD and the time limit for

---

[2] Mr. Wiker applied for benefits in 1964. VA decided his claim in January 1965. Within days of the publication of the 1964 edition of the Code of Federal Regulations (CFR), VA amended some of the relevant regulations with an effective date of January 1964. *See* 29 Fed. Reg. 1462, Jan. 29, 1964. Even though these changes were not officially included in the CFR until 1965, they were effective in 1964. In any case, none of these changes substantively modified the language at issue. For simplicity's sake, we thus call the regulations the 1964 edition throughout our opinion when discussing the law in effect at the time of VA's initial decision and later notice efforts.

filing the NOD. 38 C.F.R. § 19.109(a)(1964). This notice had to "be included in each notification of a determination of entitlement or nonentitlement to [VA] benefits by the agency of original jurisdiction." *Id*.

Putting these together, we see that VA had to provide notice to the claimant whenever it granted or denied a claim. And this notice needed to include three elements: (1) the reason for the decision, (2) the claimant's right to appeal by filing an NOD, and (3) the time limit within which an NOD could be filed. So how did VA do in meeting these obligations?

Recall that the January 1965 letter told Mr. Wiker that his cataracts were "service-connected" but, because the disability is "less than 10% disabling[,] . . . compensation is not payable." R. at 4830. As we know, this was simply not true. VA had not granted service connection for cataracts, even as the letter told him the exact opposite. Thus, it can't be that this letter adequately informed him of the correct decision or the "reason for [that] decision" as required by § 3.103. But you wouldn't know that from reading the Board decision.

According to the Board, VA hit its mark. The Board found that "[t]he January 1965 notification letter mailed to the Veteran clearly satisfied all three elements of 38 C.F.R. § 3.103." R. at 11. It told him that (1) "his claim was denied because [the] eye disability was not incurred in or aggravated by service and because his condition was not considered a disability under the law;" (2) "he could initiate an appeal to the Board of Veterans Appeals by filing [an NOD];" and (3) his "[NOD] could be filed at any time within one year of the date of the letter." *Id*. As the Board saw it, all of this meant that "the VA Regional Office complied with the notice requirements of 38 C.F.R. § 3.103 and § 19.109(a) (1964) at the time of the 1965 rating decision." *Id*. We don't agree.[3]

_____

[3] The Board did not consider whether together the two letters together met the notice requirements. Nor does the Secretary ask us to do so. Thus, we limit our consideration to whether the January 1965 letter was sufficient and the two potential exceptions addressed by the Board.

For similar reasons we do not decide the full import of 38 C.F.R. § 19.110 (1964) to this case. The Board did not address this regulation and the Secretary disclaimed its applicability during oral argument, while also noting potential due process concerns with the regulation. Oral argument at 52:25–53:50, available at https://www.youtube.com/live/B5pm_ZHqykk?feature=share&t=3145. In § 19.110 VA seemingly self-excused "the failure to notify the claimant of his [or her] right to . . . appellate review or of the time limit" to file an appeal by saying that this would not extend the time to file an appeal. Although we're not in the habit of ignoring potentially relevant regulations simply because the Board did, it does not appear that § 19.110 would change the result here. Our decision focuses on the January 1965 letter. And even assuming § 19.110 could excuse VA's failure to provide information about the right to appeal, the regulation says nothing about excusing the failure to provide "the reason for the decision" as required by § 3.103. As we explain in more detail below, there is no reasonable dispute that the January 1965 letter failed to provide the reason service connection for cataracts was denied; the letter in fact said that the benefit was granted. In short, whatever else § 19.110 may have done, it would not excuse what happened with the January 1965 letter.

True enough, the January 1965 letter told Mr. Wiker that he would not get paid and that he could appeal by filing an NOD within a year of the January letter. R. at 4830. But the letter didn't tell him two vital things—that he was denied service connection for cataracts and why. And without those, you can't find that VA's notice was adequate.

The Secretary resists this conclusion. To do so, he leans heavily on the fact that the January 1965 letter told Mr. Wiker that VA assigned a 0% rating—thus informing him that he would not get compensation—and that the January letter included all the required elements of proper notice. Secretary's Br. at 12-13. For the Secretary, this is adequate notice that the claim was denied. *Id.* But he does not explain how the admittedly erroneous letter informed Mr. Wiker of either the actual decision on cataracts or the reason for the decision. *See id.*

The chief problem is that the Secretary's arguments are only possibly correct if we look at the notice in total isolation—that is, if we ignore that VA was wrong when it told Mr. Wiker that service connection for cataracts was granted. After all, VA informed him that he would not be paid compensation and included information about how and when he could appeal. So what if the notice wasn't correct about whether service connection was denied?

We can't accept such a position. Doing so would make the notice requirement useless, which is not acceptable in a nonadversarial system built on notice and the opportunity to be heard. *See Smith v. Wilkie*, 32 Vet.App. 332, 337 (2020). Nor is it acceptable in a system governed by the due process clause of the Constitution, which requires "adequate notice of the judicial disposition of their claim and an adequate opportunity to challenge an adverse ruling." *E. Paralyzed Veterans Ass'n, Inc. v. Sec'y of Veterans Affs.*, 257 F.3d 1352, 1359 (Fed. Cir. 2001), citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–46 (1985). Due process may be flexible, but it can't bend so much that it tolerates patently incorrect notice. If veterans don't know their claim was denied, they don't have adequate notice of the disposition and can't meaningfully challenge the adverse ruling. *Id.* You can't appeal what you don't know.

More to the point, we presume that VA, like other federal agencies does things "correctly, fairly, in good faith, and in accordance with law and governing regulations." *Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 795 (Fed. Cir. 1993) (quoting *Parsons v. United States*, 670 F.2d 164, 166 (1982)). But the inverse of that must also be true—when VA says in a regulation that it intends to give a veteran notice, we assume that means VA will give the veteran correct notice. And when it falls short of that, as it did here, VA errs.

7

The Secretary also brings up that the January 1965 letter told Mr. Wiker that his "[e]ye and personality conditions. . . were not incurred in or aggravated by service." R. 4830. The problem is that this is not as helpful as the Secretary or the Board think it is.

Consider this. The letter started with what Mr. Wiker needed to show to receive compensation—a disability that is 10% or more disabling that was also incurred or aggravated by service. *Id*. Next, it told him that the evidence he submitted did not meet these requirements and thus he was "not entitled to compensation." *Id*. In explaining this conclusion, the letter first told Mr. Wiker that cataracts were "service-connected but are less than 10% disabling and compensation is not payable." *Id*. Only then did VA say that "[e]ye and personality conditions. . . were not incurred in or aggravated by service." *Id*. Thus, the letter plainly separated cataracts— which it said were service connected but noncompensable—from his other eye disabilities (congenital nystagmus and bilateral amblyopia)—which were not incurred or aggravated by service. And so, the only reasonable conclusion from this was that VA meant what it said— cataracts were service connected, though noncompensable, but his other eye disabilities were not service connected because they were unrelated to service.

That is in fact what Mr. Wiker took from this letter. When he tried to appeal VA's January 1965 decision in September 1965, his attorney told VA they were appealing VA's decision that found that "his cataracts [were] found to be service connected but" he was not compensated because "it involved less than 10% disability." R. at 4826. No matter how we read the January 1965 letter, we can't conclude that the letter gave Mr. Wiker adequate notice that service connection for cataracts had been denied.

In short, because VA incorrectly told the veteran that service connection for cataracts had been granted, it failed to give him the required notice and the decision did not become final. The Board's finding to the contrary is clearly erroneous and we reverse it.

## B. Did Exceptions to the Notice Requirements Apply?

Where do we go from here? With the Board's finding that the January 1965 letter gave Mr. Wiker proper notice reversed, we still have to consider whether anything might rescue VA's failure to give proper notice.

Recall that the Board cited the Federal Circuit's *Sanders* decision to apply the reasonable person and actual knowledge exceptions to the notice regulations. R. at 11-12. True, *Sanders* dealt

8

with different notice provisions, but these exceptions to notice requirements arise from prejudicial error analysis under 38 U.S.C. § 7261(b)(2). *See Sanders*, 487 F.3d at 887.

In *Sanders*, the Federal Circuit held that Veterans Claims Assistance Act notice errors are presumptively prejudicial but that the Secretary can rebut this presumption by, among other things, showing that the claimant had actual knowledge of the requisite information or that a reasonable person would have known the information. *Sanders*, 487 F.3d 889. Thus, it seems like these exceptions should apply whenever we are dealing with notice issues and considering harmless error.

The thing is, in *Shinseki v. Sanders*, the Supreme Court *reversed* the Federal Circuit's harmless-error framework. But the Supreme Court's focus was correcting that part of the Federal Circuit's decision that created a default rule of prejudice and placed the burden of disproving it on the Secretary. *Sanders*, 556 U.S. at 406-11. The Supreme Court didn't criticize the reasonable person or actual knowledge exceptions. And, if anything, the key lesson from the Supreme Court's decision is that we must consider whether an error is prejudicial—something Congress made clear in statute. *Id.*; 38 U.S.C. § 7261(b)(2).

With this in mind, it is not hard to conclude that the actual knowledge exception remains good law. To put it simply, we can't think of a better example of harmless error than VA failing to tell the veteran something the veteran knows anyway. A veteran who already knows the information can't be harmed by VA's failure to give notice of it. Thus, we are confident that we can continue to rely on this exception.

That said, it is less clear whether the reasonable person exception remains valid. We could assume that, because the Supreme Court didn't expressly overrule that part of the decision, it remains good law. After all, what's the purpose behind the "overruled on other grounds" parenthetical if not this? At the same time, it is questionable to assume that an exception to an incorrect rule is still good law. If the rule was tossed out, why keep the exception? Luckily, we don't need to decide this issue because, even if we assume that the reasonable person exception remains valid along with the actual knowledge exception, neither one helps VA here.

As for actual knowledge, the Board relied on three findings: (1) the veteran tried to file an appeal in September 1965; (2) the veteran appears to have acknowledged in September 1966 that VA was no longer processing his claim; and (3) he acknowledged in December 1972 that he was not service connected for cataracts. R. at 12. But none of these show that the veteran had actual

9

knowledge that he had until October 1966 to appeal the denial of service connection or that he knew why VA denied service connection.

First, recall that when Mr. Wiker tried to appeal VA's January 1965 decision in September 1965, he was still under the mistaken belief that "his cataracts [were] found to be service connected but" he was not compensated because "it involved less than 10% disability." R. at 4826. It was this mistaken belief that led to VA tying to correct its notice error. If anything, this shows that Mr. Wiker did not have knowledge that service connection was denied.

Second, the 1966 VA education benefits application, on which Mr. Wiker marked "NA" when asked which VA office had the records of any prior disability claim, fares no better as evidence that he had the actual knowledge needed to excuse VA's notice failure. R. at 4812. That in August 1966 Mr. Wiker wrote "NA" in a box asking him to identify which VA office had records of his claim for service connection tells us nothing about whether Mr. Wiker knew that VA had denied service connection for cataracts or that he knew he could appeal that decision and how long he had to do so.

Third, that in December 1972 Mr. Wiker knew that he had been denied service connection for cataracts doesn't tell us what he knew back in 1965. This isn't to say that VA can't rely on evidence that postdates the notice to prove actual knowledge. If Mr. Wiker wrote that he knew when he got VA's January 1965 letter that he had been denied service connection for cataracts and he also knew how long he had to appeal, the Board could consider that evidence even if it came years after the fact. But the letter said nothing like this. R. at 4721.

True, the letter shows us that Mr. Wiker *eventually* knew that VA denied service connection for cataracts. But the letter does nothing to show when Mr. Wiker learned this information. Nor does it tell us that he ever knew that he could appeal the October 1965 notice or his deadline for doing so. Put differently, to find that Mr. Wiker had actual knowledge, we would need evidence showing that, before his appeal became final, he had actual knowledge that VA denied his cataracts claim, that he could appeal that denial, and that he had a year from when he learned he was denied to file such an appeal. But none of the evidence relied on by the Board gets us there.

We know that he didn't have all this information when he tried to appeal. And even at the point that VA sent him the corrective notice, we don't know that Mr. Wiker had any idea that he had a year from that letter to appeal. We don't know if he even knew that he had any right to appeal

that letter. If anything, his actions suggest the opposite. After VA sent him the initial notice with appellate rights in January 1965, Mr. Wiker tried to appeal. But when VA sent him a letter without appellate rights, he didn't.

The bottom line is, none of the evidence mentioned by the Board makes its conclusion about actual knowledge plausible. Just as with the Board's finding about the January 1965 letter, we conclude that the Board clearly erred when it found that Mr. Wiker had actual knowledge of VA's decision and his appellate rights.

Similar reasons doom the Board's reasonable person analysis. For this exception to apply, we would need to look at the evidence and say that a reasonable person would have known that VA denied service connection for cataracts and know that one could appeal and had a year to do so. But there is no way to reach that conclusion here.

Even if we accept that a collective reading of the two letters told Mr. Wiker that he had been denied service connection for cataracts and why, nothing in the letters tells him that he had until October 1966—a year from when VA sent him the corrected notice letter—to file an appeal.

VA's January 1965 notice letter specified that Mr. Wiker could appeal VA's decision and had a year to do so. R. at 4830. But VA's language tied the ability to appeal and the time to appeal specifically to the January 1965 letter. *Id*. VA told Mr. Wiker he had one year "from the date of *this* letter." *Id*. (emphasis added). And the October 1965 letter said nothing about the right or the time to appeal. R. at 2552. Thus, we're not sure how a reasonable person was supposed to know that letter was appealable or how long the appeal period lasted.

If anything, comparing VA's January 1965 notice letter with the October 1965 corrective letter would lead a reasonable person to conclude that the decision could not be appealed. At best, the reasonable person would get the incorrect impression that the appellate deadline was fast approaching as it was tied to the January 1965 letter.

This isn't to say that we're creating a categorical rule that VA can't correct notice errors or write an initial notice in a way that could inform a reasonable person about the appellate rights or the appellate deadline in a way that would carry over to a corrective notice. If VA's January 1965 notice had told Mr. Wiker that claimants have a year to appeal whenever they receive a notice of VA's decision, the case could turn out differently. In such a case, a reasonable person could be expected to apply that knowledge to the corrected notice. And not to state the obvious, but if VA's

October 1965 letter had simply told Mr. Wiker that he could appeal and how much time he had, we would also have a much different case. But VA didn't do that here.

No matter how we look at it—whether through the lens of actual knowledge or the eyes of a reasonable person, the evidence doesn't back the conclusion that Mr. Wiker knew or should have known all the information VA needed to tell him. Thus, we hold that VA's January 1965 decision did not become final.

### C. Impact of the June 1973 Letter

This still leaves the question of whether VA's June 1973 VA letter telling Mr. Wiker that his claim would not be reopened impacted the finality of the January 1965 decision. R. at 4702. After all, "a subsequent final adjudication of a claim which is identical to a pending claim that had not been finally adjudicated terminates the pending status of the earlier claim." *Williams v. Peake*, 521 F.3d 1348, 1351 (Fed. Cir. 2008). But, as Mr. Wiker points out, the June 1973 letter "did not inform him that the RO had denied a request to reopen, that his petition was being denied on the merits, that he could appeal any decision contained in the letter, or how to do so." Appellant's Br. at 28. The letter simply told him that he had not appealed the January 1965 rating decision and that the RO would take no further action because "no new and substantiating evidence had been submitted." R. at 4702. Whatever that 1973 letter was, it was not a subsequent final decision.

Even if this letter were a decision, it suffered from some of the same notice defects as VA's 1965 letters. The letter did not inform the veteran of (1) the reason for the decision, (2) his right to appeal by filing an NOD, or (3) the time to file the NOD. R. at 4702; *see* 38 C.F.R. § 3.103(e) (1973). This means that, at best, the 1973 letter was another nonfinal decision and that the January 1965 claim remained pending.

In any event, the Board did not find that the 1973 letter was a decision. Instead, the Board saw it as a letter requesting more evidence. R. at 14. And, the Board concluded, because Mr. Wiker did not respond with the requested evidence, he abandoned his claim. *Id*.

To be sure, this finding is somewhat strained—the letter didn't exactly request that Mr. Wiker submit evidence. Instead, it reported VA's conclusion that because "no new and substantiating evidence has been submitted. . . no further action may be taken." R. at 4702.[4] Thus,

---

[4] VA's use of passive voice in this letter makes it particularly hard to figure out that the letter was a request. VA says only that the evidence was not submitted. But we don't know who failed to submit it or where VA was expecting the evidence to come from. If VA wanted evidence from Mr. Wiker, it should have told him that.

it is hard to understand how the Board saw it as "VA's request for new and substantiating evidence." R. at 14. If VA was asking for evidence, it was being coy about it. This then calls into question the Board's reliance on a regulation that, by its own terms, applies when "evidence [is] requested in connection with an original claim, a claim for increase or to reopen." 38 C.F.R. § 3.158(a) (1973).

Even so, the Board's finding that the 1973 claim was abandoned is favorable to Mr. Wiker as far as it confirms that no final adjudication happened in 1973. True, the Board saw abandonment as a bar to an earlier effective date and we can't agree with that legal conclusion, because the 1964 claim was still pending. But as far as the Board's finding of abandonment strengthens the conclusion that the 1964 claim remained pending, we leave it in place. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007), *aff'd in part, dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009). And no matter how we look at it, the June 1973 letter did not impact the finality of the January 1965 decision.

## D. Remedy

This brings us to the final issue—if the January 1965 decision remained pending, what is the proper remedy? Mr. Wiker would like us to assign an effective date based on when he left service. Appellant's Br. at 27-30; Reply Br. at 12-13. But we agree with the Secretary that there is still fact-finding left for the Board to do. Secretary's Br. at 21-22.

When there is more fact-finding to be done, the proper thing for us is to remand the claim to the Board. *See Tadlock v. McDonough*, 5 F.4th 1327, 1337-38 (Fed. Cir. 2021). And here, Mr. Wiker's effective date depends on when his service-connected disability began—something the Board specifically declined to make findings about in the decision on appeal. R. at 11. Thus, even if an earlier effective date is warranted based on the December 1964 claim, the Board must still determine when Mr. Wiker's disability first arose. *See Tadlock*, 5 F.4th at 1337-38; 38 C.F.R. § 3.400(b)(2). Because we agree with Mr. Wiker that his 1964 claim did not become final, we do not address his other arguments, including those about how VA treated his September 1965 NOD; they would not lead to additional relief. *See Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (per curiam order). If necessary, Mr. Wiker can still raise these or other arguments on remand. *See Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order).

13

## III. CONCLUSION

We REVERSE the Board's finding that the January 1965 rating decision became final. The July 1, 2021, Board decision is SET ASIDE, and the matter is REMANDED for the Board to assign an effective date based on the 1964 claim.