# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-7299

KEVIN G. WALLEMAN, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 24, 2022                                     Decided June 9, 2022)

*Christian A. McTarnaghan*, with whom *Grace Hurley* and *Kevin A. Medeiros*, all of Providence, Rhode Island, were on the brief for the appellant.

*Ronen Z. Morris*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Christopher W. Wallace*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and ALLEN and LAURER, *Judges*.

ALLEN, *Judge*: This appeal calls on us to revisit the multifaceted means by which VA compensates service-connected knee disabilities. Appellant Kevin G. Walleman served the Nation honorably in the United States Army from December 1971 to April 1972 and from March 2003 to June 2004.[1] We gratefully acknowledge Mr. Walleman's service, for which he earned the Global War on Terrorism Expeditionary Service Medal and the Army Commendation Medal, among other distinctions.[2] In this appeal, which is timely and over which we have jurisdiction,[3] he contests an August 27, 2020, Board of Veterans' Appeals (Board) decision that denied (1) an initial disability rating higher than 10% under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5259 (2020), and (2) a separate evaluation under 38 C.F.R. § 4.71a, DC 5257 (2020), for his left knee disability.[4] The

---

[1] Record (R.) at 263, 225.

[2] R. at 225.

[3] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[4] R. at 5-24. The Board also remanded appellant's claims for entitlement to service connection for (1) a right hip disability as secondary to the service-connected left knee disability; (2) a left hip disability, as secondary to the service-connected left knee disability; and (3) a right knee disability, including as secondary to the left knee disability. R. at

Board also granted appellant a 10% disability rating under 38 C.F.R. § 4.71a, DC 5260 (2020).[5] Appellant argues that the Board erred when it did not award him a separate evaluation under DC 5257 and a higher disability rating under DC 5260 for his left knee disability.

This matter was submitted to a panel of the Court principally to address whether the rule against pyramiding categorically precludes a separate disability rating for lateral instability under DC 5257 (2020), when (1) a claimant is already rated under DC 5259, which may contemplate lateral instability if it is a residual of a meniscectomy, and (2) there are other residuals that could independently warrant a compensable rating under DC 5259. On March 24, 2022, we held oral argument at the Penn State Law School in University Park, Pennsylvania. The Court thanks the students, faculty, and staff at Penn State Law for their hospitality during our visit.

The Court holds that an assignment of a disability rating under DC 5259, for symptoms that do not include lateral instability, does not preclude as a matter of law a separate evaluation under DC 5257 for lateral instability of the same knee. As we explain, lateral instability may be a distinct manifestation of a knee disability that independently warrants entitlement to a separate evaluation under DC 5257. There is nothing in the law that renders assignments of disability ratings under DC 5257 and DC 5259 categorically violative of the rule against pyramiding. Accordingly, the Court will reverse the Board's finding that appellant is precluded from a separate disability rating under DC 5257 for his slight instability and remand the matter for further development, as necessary, and readjudication consistent with this decision. We will also remand for the Board to consider whether appellant's November 2019 VA medical examination is adequate and to determine the appropriate disability rating for appellant's left knee under all relevant DCs at issue in this matter.

## I. FACTS AND PROCEDURAL HISTORY

Following his first separation from service, appellant underwent a left knee meniscectomy in 1997.[6] He later mobilized to Iraq in March 2003 and reported that the duties he performed there

---

5. The Court lacks jurisdiction over these matters. *See Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order).

[5] The Board's finding that appellant is entitled to a 10% disability rating under DC 5260 is a favorable determination we may not review. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007).

[6] R. at 850.

further aggravated his left knee disability.[7] In May 2011, appellant filed a claim seeking entitlement to service connection relating to his left knee.[8]

In July 2013, appellant underwent a knee and lower leg VA examination as part of his claim.[9] The examiner noted that appellant injured his left knee during service and underwent a meniscectomy.[10] A July 2013 rating decision granted service connection for a left knee torn meniscus status post meniscectomy, effective May 2011.[11] The decision assigned appellant a 10% disability rating for painful motion and symptomatic residuals of semilunar cartilage removal under DC 5259-5260.[12] Appellant disagreed with the assigned rating and appealed.[13]

In May 2018, the Board remanded appellant's claim concerning an increased disability rating for his left knee disability, concluding that the July 2013 VA medical opinion was inadequate because the examiner did not include passive range-of-motion measurements or pain on weight-bearing testing pursuant to *Correia v. McDonald*, 28 Vet.App. 158 (2016).[14] The Board directed the RO to obtain a new medical examination that tested appellant's active motion, passive motion, and pain with weight-bearing and without weight-bearing.[15] VA subsequently afforded appellant a new VA examination in November 2019.[16]

The November 2019 examination noted appellant's diagnoses of a left knee meniscal tear and osteoarthritis, and a history of slight lateral instability in his left knee.[17] The examiner stated that "where possible," appellant's knees "were assessed for both weight[-]bearing and non[-

---

[7] *See* R. at 225, 500, 508.

[8] R. at 864.

[9] R. at 128-38.

[10] R. at 129.

[11] R. at 280-86, 298-307.

[12] *Id.*

[13] R. at 276-78.

[14] R. at 172-76.

[15] *Id.*

[16] R. at 53-64.

[17] R. at 53, 59.

]weight[-]bearing testing," and that appellant experienced antalgic gait in weight-bearing situations.[18]

The matter returned to the Board, which rendered the decision on appeal on August 27, 2020.[19] In that decision, the Board determined that appellant's "left knee disability has manifested as symptoms of painful motion, tenderness to palpation, stiffness, swelling, achiness, popping, locking, clicking, grating, effusion, crepitus, antalgic gait, slight instability, and a genu varus."[20] The Board found that appellant's disability is most appropriately rated separately under DCs 5259 and 5260, rather than collectively under 5259-5260.[21] The Board assigned appellant a 10% disability rating, but not higher, under DC 5260 for limited, but otherwise noncompensable, flexion of the left knee due to pain.[22] Additionally, the Board assigned a separate 10% disability rating under DC 5259 based on appellant's "symptomatic residuals from his left knee meniscectomy [that] have manifested by swelling, popping, locking, stiffness, grating, and clicking."[23] The Board also acknowledged appellant's slight instability of the left knee, but it declined to award another separate 10% disability rating under DC 5257 because "[k]nee instability is contemplated by the rating criteria under both [DCs] 5257 and 5259, with instability as a symptomatic residual of the meniscectomy."[24] The Board concluded that assigning a disability rating under DC 5257 under these circumstances would violate the rule against pyramiding.[25] This appeal followed.

## II. THE PARTIES' ARGUMENTS

Appellant contends that the Board erred when it determined that separate disability ratings under DC 5257 and DC 5259 were precluded as a matter of law under the rule against pyramiding. Specifically, appellant argues that assigning disability ratings under both DC 5257 and DC 5259 does not violate the rule against pyramiding because DC 5259 does not list any specific symptoms.

[18] R. at 64.

[19] R. at 5-24.

[20] R. at 15; *see* R. at 5-6.

[21] R. at 6.

[22] R. at 6, 16-17.

[23] R. at 17.

[24] *Id.*

[25] R. at 18.

4

He alleges that merely because lateral instability may be contemplated under DC 5259, that does not mean it cannot be rated separately under DC 5257—as long as such lateral instability is not compensated twice. Appellant points to the Court's decision in *Lyles v. Shulkin* to support his contention, in which the Court held "that evaluation of a knee disability under DCs 5257 or 5261 or both does not, as a matter of law, preclude separate evaluation of a meniscal disability of the same knee under DC 5258 or 5259, and vice versa."[26]

Moreover, appellant contends that pooling all manifestations of his left knee disability under DC 5259, even though certain manifestations can independently support entitlement to compensation under another DC, is contrary to VA's duty to maximize benefits. Appellant argues that because VA's duty requires it to exhaust all schedular alternatives for rating disabilities, including rating a single disability under multiple DCs, appellant is entitled to compensation under DC 5259 for his symptoms of swelling, popping, locking, stiffness, grating, effusion, and clicking, and compensation under DC 5257 for lateral instability of his left knee.

Finally, appellant argues that the Board erred when it relied on his November 2019 VA medical examination because it is inadequate for adjudication purposes. Specifically, he contends that the opinion falls short of the requirements stated in the Court's *Correia* decision by failing to adequately convey information about his functional loss due to pain and explain why certain required testing could not be performed.

The Secretary defends the Board's decision in full and urges affirmance. The Secretary contends that DCs 5259 and 5257 contemplate distinct disabilities that involve distinct components of the knee, and asserts that where, as here, a claimant exhibits instability as a residual of a meniscectomy, that represents a distinct component of the knee that is only compensable under DC 5259. Therefore, the Secretary argues that, based on the facts here, the Board was on solid footing when it concluded that the rule against pyramiding precludes a separate rating under DC 5257 as a matter of law. In addition, at oral argument the Secretary argued that allowing separate ratings under DC 5259 and DC 5257 as appellant argues would require the Court to exceed our jurisdiction under 38 U.S.C. § 7252. Finally, the Secretary contends that appellant failed to raise his argument concerning the adequacy of the November 2019 VA medical examination to the Board. Alternatively, the Secretary asserts that the Board properly relied on appellant's November

---

[26] 29 Vet.App. 107, 109 (2017).

2019 VA medical examination and that the examination is adequate for adjudication purposes. The Secretary argues that the examination sufficiently discusses appellant's functional loss due to pain and complies with the requirements set out in *Correia*.

### III. ANALYSIS

*A. Availability of a Separate Rating*
*Under DC 5257 when a Claimant Has a Rating Under DC 5259*

Appellant's principal argument concerns the interaction among DCs 5257, 5259, and the rule against pyramiding. The parties do not dispute that appellant is entitled to a 10% disability rating under DC 5259, which is a favorable determination we could not review in any event.[27] The question at the heart of this case involves whether a claimant can have a separate rating under DC 5257 for lateral instability when the claimant is already rated under DC 5259, which may contemplate such instability, and there are other residuals that could independently warrant a compensable rating under DC 5259. Accordingly, we must review the relevant DCs involved in this appeal and the basic principles underlying this Court's interpretive endeavors concerning those DCs. After doing so, we conclude that separate ratings are permissible.

<u>1. Legal landscape.</u>

The rating schedule for disabilities represents the average impairment in earning capacity on civil occupations as a result of each disability and its residuals.[28] Generally, all disabilities, including those arising from a single disease entity, are to be rated separately.[29] When more than one disability rating is applied, the individual evaluations are combined pursuant to 38 C.F.R. § 4.25 "to determine the veteran's overall impairment in earning capacity, with combined evaluations corresponding to different statutory amounts of monthly disability compensation."[30]

The rating schedule contains several DCs addressing the evaluation of knee disabilities. As relevant to this aspect of the appeal, two DCs are in play. But before we address them, we note that effective February 7, 2021, DC 5257 was amended in a way that significantly changed the

---

[27] *See Medrano*, 21 Vet.App. at 170.

[28] *See* 38 U.S.C. § 1155; 38 C.F.R. § 4.1 (2021); *see also Esteban v. Brown*, 6 Vet.App. 259, 260 (1994).

[29] 38 C.F.R. § 4.25(b) (2021) ("Except as otherwise provided in this schedule, the disabilities arising from a single disease entity . . . are to be rated separately as are all other disabiling [sic] conditions, if any.").

[30] *Lyles*, 29 Vet.App. at 113.

criteria for evaluating disabilities under the DC.[31] There is no question that the amended regulation is not applicable to appellant's claim because it was enacted after the Board's decision. Therefore, the Secretary's attempt to rely on the current—that is, amended—criteria of DC 5257 and the comments relating to it in the Federal Register adds nothing to our analysis.[32] To be perfectly clear, we have not considered the amended version of DC 5257 in reaching our decision today.

With this preliminary matter out of the way, we turn to the relevant DCs. First, the version of DC 5257 that is applicable to appellant's claim provides, in full:

Knee, other impairment of:
Recurrent subluxation or lateral instability:

| | |
|---|---|
| Severe | 30 |
| Moderate | 20 |
| Slight | 10 |

In addition, DC 5259 (2020) provides a 10% evaluation for "Cartilage, semilunar, removal of, symptomatic." To underscore, the DC provides nothing more than this one general phrase.

As we have noted, the issue we face is under what circumstances a claimant may obtain ratings under both DC 5257 and DC 5259. This brings us to VA's rule against pyramiding, which is a regulatory exception to the general rule that all disabilities are to be rated separately.[33] The relevant regulation provides that evaluation of the "same disability" or the "same manifestation" under various diagnoses "is to be avoided."[34] The prohibition prevents the rating schedule from being "employed as a vehicle for compensating a claimant twice (or more) for the same symptomatology" so as to not overcompensate the claimant, or stated differently, to compensate a claimant only for his or her actual impairment.[35] Still, a claimant may have "separate and distinct manifestations attributable to two different disability ratings" that entitle him or her to be compensated under different diagnostic criteria.[36] Two critical points in determining whether a separate evaluation is warranted are (1) that none of the symptoms are duplicative or overlapping

---

[31] *Compare* 38 C.F.R. § 4.71a, DC 5257 (2021), *with* 38 C.F.R. § 4.71a, DC 5257 (2020).

[32] *See* Oral Argument (OA) at 22-25:55, *Walleman v. McDonough*, U.S. Vet. App. No. 20-7299 (oral argument held Mar. 24, 2022), http://www.uscourts.cavc.gov/oral_arguments_audio.php.

[33] *See* 38 C.F.R. § 4.14 (2021).

[34] *Id.*; *Lyles*, 29 Vet.App. at 113; *Esteban*, 6 Vet.App. at 261.

[35] *Brady v. Brown*, 4 Vet.App. 203, 206 (1993); *see Lyles*, 29 Vet.App. at 113 (quoting *Brady*, 4 Vet.App. at 206).

[36] *Fanning v. Brown*, 4 Vet.App. 225, 230 (1993); *see Lyles*, 29 Vet.App. at 113.

with the symptoms of the other conditions—i.e., none of the disabilities share a common manifestation—and (2) whether that common manifestation would be improperly compensated more than once.[37]

Additionally, the Secretary must maximize a claimant's benefits.[38] VA is required to "render a decision which grants every benefit that can be supported in law while protecting the interests of the Government."[39] This means the Board is required to "exhaust *all* schedular alternatives for rating a disability,"[40] including rating a single disability under multiple DCs so long as doing so does not run afoul of, for example, the rule against pyramiding.[41]

Finally, questions of regulatory interpretation are ones of law that the Court reviews de novo.[42] The basics of regulatory interpretation are well established. We look first to the text and structure of a regulation, which is the best indication of its plain meaning.[43] If the plain meaning of the regulation is clear on its face, then such plain meaning controls, and "that is 'the end of the matter.'"[44]

### 2. The rule against pyramiding does not categorically preclude separate ratings under DCs 5257 and 5259.

With the foregoing general principles in mind, we turn now to the question on appeal: whether the rule against pyramiding categorically precludes a separate disability rating for lateral instability under DC 5257, when a claimant is (1) already rated under DC 5259, which may contemplate such instability if it is a residual of a meniscectomy, and (2) there are other residuals of a meniscectomy that could independently warrant a compensable rating under DC 5259. We hold that the rule against pyramiding does not categorically preclude a separate rating under DC 5257 for lateral instability simply because a claimant is also in receipt of a rating under DC 5259.

---

[37] *See Lyles*, 29 Vet.App. at 118; *Esteban*, 6 Vet.App. at 262.

[38] *Morgan v. Wilkie*, 31 Vet.App. 162, 167 (2019); *Bradley v. Peake*, 22 Vet.App. 280, 294 (2008).

[39] 38 C.F.R. § 3.103(a) (2021); *see Morgan*, 31 Vet.App. at 167.

[40] *Morgan*, 31 Vet.App. at 164.

[41] *See id.* at 168.

[42] *See Foster v. McDonough*, 34 Vet.App. 338, 344-45 (2021).

[43] *See Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017).

[44] *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)); *see also Kisor v. Wilkie*, ─── U.S. ───, 139 S. Ct. 2400, 2415, 204 L. Ed.2d 841 (2019).

The crux of the Secretary's argument is that because the Board viewed appellant's instability as a residual of his meniscectomy, a separate evaluation under DC 5257 would be duplicative of an award of compensation under DC 5259.[45] And this is so according to the Secretary even if there are other symptoms of a meniscectomy that would independently support a rating under DC 5259. We find this argument unpersuasive for several reasons. As we discuss, the Secretary fails to consider the general, non-specific language of DC 5259. In addition, instability—as a distinct manifestation of a knee disability—would not be compensated twice. And finally, the Secretary's position is inconsistent with VA's duty to maximize benefits.

As an initial matter, we do not find any support for the Secretary's contention that our decision runs afoul of our jurisdictional limits.[46] It is clear that the Court lacks jurisdiction to "review the content of the rating schedule," and instead has "jurisdiction to interpret 'the language in the regulations' related to or contained in the rating schedule."[47] We emphasize what our decision today does not do: review the substantive content of the rating schedule, or as the Secretary put during oral argument, say that appellant's evaluation under DC 5259 is "not enough" or that he "deserves more money."[48] The decision merely interprets the language relating to the rating schedule, which is clearly within our jurisdictional gambit.[49] Indeed, such interpretative endeavors are the bread-and-butter of what courts do.

Turning to the merits, we begin with the plain text of DC 5259, which provides a 10% disability rating for "[c]artilage, semilunar, removal of, symptomatic."[50] In other words, the regulation unambiguously provides compensation for symptoms that are residuals of a veteran's meniscectomy. The regulation does not identify (or exclude for that matter) any specific symptoms—unlike many of the conditions listed in VA's rating schedule.[51] Nothing in the plain language of DC 5259 limits the symptoms of a meniscectomy that may support an evaluation under

---

[45] Secretary's Brief (Br.) at 8-11.

[46] The Secretary raised this argument for the first time during oral argument; however, we will still address it because it goes to our jurisdiction. *See* 38 U.S.C. § 7252.

[47] *Foster*, 34 Vet.App. at 344 (citing *Smith v. Nicholson*, 451 F.3d 1344, 1346-47 (Fed. Cir. 2006)).

[48] *See* OA at 48:54-49:10.

[49] *See Foster*, 34 Vet.App. at 344.

[50] 38 C.F.R. § 4.71a, DC 5259 (2020).

[51] *See* 38 C.F.R. § 4.71a (2020); *see also Doucette v. Shulkin*, 28 Vet.App. 366, 368 (2017).

the broad, general language of this provision. Nor does the regulation enumerate any specific symptoms that are necessary to support a rating under DC 5259. It is inappropriate for a court to change a regulation in the way the Secretary's interpretation functionally asks us to do.[52]

On the other hand, DC 5257 provides disability compensation for a specific condition, as relevant here, lateral instability of the knee. By its plain terms, it provides compensation "for veterans suffering from impairments of the knee, other than those enumerated elsewhere in the relevant regulations, that cause the symptoms of recurrent subluxation or lateral instability."[53] This Court has previously held that when a condition is specifically listed in the rating schedule, it may not be rated by analogy.[54] In that regard, we've held that it is most appropriate to rate a condition using a DC in which the condition is specifically listed, rather than rate the condition under a general, non-specific provision.[55] Thus, when a veteran experiences lateral instability as a residual of his or her meniscectomy, it is most appropriately rated under DC 5257 (2020) because that regulatory provision specifically provides for evaluations based (as relevant here) on lateral instability of the knee.[56] This is true even if lateral instability was the only residual of a meniscectomy. In such a case, the lateral instability should only be rated under DC 5257 because that DC specifically provides for lateral instability that is slight, moderate, or severe, potentially entitling a claimant to more compensation than would be available under DC 5259.[57] To hold that lateral instability must only be rated under DC 5259 because it flows from a meniscectomy would essentially render DC 5257 redundant in the context of a meniscectomy.[58] Indeed, we conclude that the nature of the rating schedule compels the conclusion that DC 5257 is the appropriate vehicle by which to evaluate lateral instability of the knee. So, we reject the Secretary's contention

---

[52] *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010) (declining to read into a statute an express limitation that Congress did not include in the statute's plain language and holding that the Court of Appeals' decision to add one "more closely resembles 'invent[ing]' a statute rather than interpret[ing] one'" (quoting *Pasquantino v. United States*, 544 U.S. 349, 359 (2005)).

[53] *Delisle v. McDonald*, 789 F.3d 1372, 1375 (Fed. Cir. 2015); 38 C.F.R. § 4.71a, DC 5257 (2020).

[54] *Copeland v. McDonald*, 27 Vet.App. 333, 337 (2015).

[55] *See id.* 337.

[56] *See id.*; 38 C.F.R. § 4.71a, DC 5257 (2020).

[57] *See* 38 C.F.R. § 4.71a, DC 5257 (2020).

[58] *Prokarym v. McDonald,* 27 Vet.App. 307, 311 (2015) ("The Court simply cannot accept a construction that would render . . . [an] entire DC superfluous in this manner.").

during argument that any condition or symptom that results from meniscal surgery must be rated under DC 5259 and cannot be rated under other provisions.[59]

We note that it strikes us that the Secretary's position is quite broad in its implications. If the Secretary's position were correct, it would be inappropriate for VA to rate a knee condition under *any* DC other than 5259 if the symptom at issue was related to a meniscectomy. Here, that position would suggest that the Board was wrong to provide a separate evaluation for appellant under DC 5260 since it appears his "limited, yet noncompensable, flexion of the left knee due to pain," was also the result of his meniscectomy.[60] We see no support at all in the rating schedule to work such a revolutionary change in how we understand VA to have operated.

Our holding today is also consistent with the principles the Court articulated in *Esteban* and *Lyles* for rating knee disabilities. We held in *Esteban* that it is possible for a veteran "to have separate and distinct manifestations from the same injury permitting two different disability ratings."[61] In *Lyles*, we held that "the pyramiding inquiry does not end with whether two disabilities share a common manifestation, but continues to inquire whether that common manifestation would be improperly compensated more than once."[62] "It follows that, where a certain manifestation of a disability has not been compensated via an assigned evaluation under a particular DC, evaluation of that manifestation under another DC would not constitute pyramiding."[63] The key consideration that precludes separate ratings is whether the ratings are compensating the same manifestation or symptom.[64] As applicable here, if an assignment of an evaluation under DC 5259 is supported with residuals that do not include lateral instability, a claimant may also be entitled to an evaluation under DC 5257 for lateral instability because that symptom is a distinct manifestation that does not overlap with any *other* residuals of a meniscectomy. We stress that this way of approaching the situation is not rating individual

---

[59] *See* OA at 19:20-:50.

[60] *See* R. at 16-17; *Mitchell v. Shinseki*, 25 Vet.App. 32, 44 (2011) (explaining that a VA joints examination must address the extent of functional loss or limitation caused by pain or a flare-up); *DeLuca v. Brown*, 8 Vet.App. 202, 205-06 (1995) (requiring VA to consider the disabling effect of painful motion when rating joints).

[61] *Esteban*, 6 Vet.App. at 261 (citing *Fanning,* 4 Vet.App. at 231).

[62] *Lyles*, 29 Vet.App. at 118.

[63] *Id.*

[64] *Id.* at 118-19.

symptoms, but instead is evaluating distinct manifestations from the same injury. And that is precisely what the rating schedule is meant to accomplish.

We also note that VA's *Adjudication Procedures Manual* (M21-1), though not binding on us or the Board, is entirely consistent with our holding today.[65] The (M21-1) states: "Evaluation of a knee disability under 38 CFR [§] 4.71a, DC 5257, DC 5260, or 5261 does not, as a matter of law, preclude separate evaluation of a meniscal disability of the same knee under . . . DC 5259 (symptomatic removal of semilunar cartilage) . . . ."[66] VA notes that the critical factor barring a separate assignment under DC 5259 is "when *all* the symptoms of the meniscal disability are used to support" an assignment under DC 5257.[67] That condition does not exist here factually given the Board's finding that an evaluation under DC 5259 was supported by "swelling, popping, locking, stiffness, grating, and clicking."[68] Thus, the M21-1 supports the notion that the assignment of an evaluation under DC 5259 does not preclude a claimant from a separate evaluation under DC 5257.

Moreover, permitting a separate rating under DC 5257 is fully consistent with VA's duty to maximize benefits. VA must render decisions that grant every benefit the law supports and "exhaust all schedular alternatives for rating a disability,"[69] including rating a single disability under multiple DCs.[70] As applicable here, VA has a duty to maximize a veteran's benefits by assigning a separate rating under DC 5257 for lateral instability of the knee even if the veteran is assigned a rating under DC 5259 for symptoms independent of such instability. The mere fact that instability flows from a meniscectomy does not mean that the veteran is precluded from the evaluation contemplated under DC 5257. VA's duty requires it to resolve doubt in favor of veterans, and the Board did not fulfill its obligations by precluding a rating under DC 5257 when

---

[65] *See Healy v. McDonough*, 33 Vet.App. 312, 320-21 (2021); *Overton v. Wilkie*, 30 Vet.App. 257, 264 (2018).

[66] M21-1, pt. V, subpt. iii, ch. 1, § B.4.e. (Separate Evaluation of Meniscal Disabilities), www.knowva.ebenefits.va.gov (last visited June 2, 2022).

[67] *Id.* (emphasis added). We note that the Board should have discussed this M21-1 provision in its decision because it was germane to the issue the Board decided. *See Healy,* 33 Vet.App. at 320-21; *Overton*, 30 Vet.App. at 264. Given our conclusion about the interpretation of the relevant DCs, something we review de novo, it is not necessary for us to remand the matter for the Board to discuss the M21-1 provision in the first instance. Nonetheless, we remind the Board that it must discuss relevant M21-1 provisions when it renders its decisions.

[68] R. at 17.

[69] *Morgan*, 31 Vet.App. at 164 (emphasis omitted).

[70] *See id.* at 168; 38 C.F.R. § 3.103(a).

appellant's residuals, not including instability, independently support his assignment of an evaluation under DC 5259.[71]

Finally, we can't say that the Board's error was harmless.[72] The Board expressly found that appellant suffers from slight instability in his left knee.[73] The Secretary's attempt to downplay this finding as mere reporting of medical history is contrary to our decisions in *English v. Wilkie*[74] and *Tedesco v. Wilkie*,[75] in which we held that the Board cannot categorically favor objective medical evidence over lay reports of instability.[76] Even if the finding of instability was based only on appellant's lay statements—a matter on which we express no opinion—appellant was competent to make such observations.[77] We acknowledge that the Board did not state that appellant's slight instability was "lateral" instability as contemplated under DC 5257.[78] But we note that the record at least suggests it was lateral instability.[79] In any event, this Court is not in a position to weigh in on such a factual question.[80] Here, the Board found that appellant suffers from slight instability, and the facts suggest that he may be entitled to an evaluation under DC 5257 when a factfinder views this matter through the correct legal lens. That is enough to reject the claim that any error here is harmless.

In sum, we conclude that an assignment of a knee disability rating under DC 5259 does not preclude as a matter of law a separate evaluation under DC 5257 for lateral instability of the same knee. Therefore, we reverse the Board's determination that assigning a disability rating under DC 5257 is categorically precluded by the rule against pyramiding when there is also a disability rating

---

[71] R. at 17; *Morgan*, 31 Vet.App. at 164, 168; *see* 38 C.F.R. §§ 3.103(a), 4.3 (2021).

[72] *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (explaining that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

[73] R. at 6; *see also* R. at 59 (noting appellant's history of slight lateral instability).

[74] 30 Vet.App. 347 (2018).

[75] 31 Vet.App. 360 (2019).

[76] *See id.* at 367; *English*, 30 Vet.App. at 352-53.

[77] *See Buchanan v. Nicholson*, 451 F.3d 1331, 1335-37 (Fed. Cir. 2006) (noting that claimants are competent to report on observable symptoms); *see also Layno v. Brown*, 6 Vet.App. 465, 469 (1994) (distinguishing competence from credibility).

[78] *See* R. at 6.

[79] R. at 59 (noting appellant's history of slight lateral instability).

[80] *See Tadlock v. McDonough*, 5 F.4th 1327, 1336-37 (Fed. Cir. 2021).

assigned under DC 5259. We remand the matter for the Board to properly consider the evaluation criteria of DC 5257 to appellant's claim under the correct legal standard.

## B. Inadequacy of the November 2019 VA Medical Examination

Appellant also contends that his November 2019 VA medical examination is inadequate for adjudication purposes and that the Board erred by relying on it to deny him higher evaluations for his left knee condition.[81] Specifically, appellant argues that the examination does not adequately discuss the disabling effect of his pain, as required by *Correia*.[82] The Secretary argues that appellant failed to raise this argument below, and therefore should not be permitted to do so now.[83] Alternatively, the Secretary asserts that the examination is adequate for adjudication purposes.[84] There is no question that the Board clearly relied on the 2019 examination in its decision. Yet, the Board did not expressly address the adequacy of the examination in its decision even though that determination is a factual finding for the Board to make.[85] In such a case, it is entirely within the Court's discretion to infer that the Board implicitly determined that the examination upon which it relied was adequate.[86] However, we conclude that, in the context of this particular appeal, where we have already determined that remand is warranted, the Board should address exam adequacy in the first instance. Even though we will not address the question of adequacy, the Court will provide guidance to the Board for its consideration of this issue on remand, pursuant to *Quirin v. Shinseki*.[87]

---

[81] *See* Appellant's Br. at 17-22. Appellant also contends that the Board erred by relying on the July 2013 VA medical examination, which was previously determined to be inadequate. *Id.*; *see* R. at 174-76. Given the remand of this matter, the Court will also not address this argument on the merits. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001). However, we note that although inadequate examinations can retain some probative value, on remand the Board must explain what parts of the inadequate examination it determines to be probative and support that determination with an adequate statement of reasons or bases. *See Monzingo v. Shinseki*, 26 Vet.App. 97, 107 (2017) (per curiam) ("[E]ven if a medical opinion is inadequate to decide a claim, it does not necessarily follow that the examination is entitled to absolutely no probative weight.").

[82] *See* Appellant's Br. at 17-22.

[83] Secretary's Br. at 16.

[84] Secretary's Br. at 17-18.

[85] *D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008) ("Whether a medical opinion is adequate is a finding of fact.").

[86] *See Miller v. Wilkie*, 32 Vet.App. 249, 260-62 (2020) (discussing review of implicit fact-finding concerning credibility issues and canvassing other situations in which the Court has reviewed the Board's implicit fact-finding).

[87] *See* 22 Vet.App. 390, 396 (2009) (holding that the Court can address other arguments after determining that remand is warranted).

Once VA provides a medical examination, it must ensure that the examination is adequate. A medical examination is adequate when it is "based upon consideration of the veteran's . . . medical history and examinations and also describes the disability in sufficient detail" so that the Board's "evaluation of the claimed disability will be a fully informed one."[88] "It is the factually accurate, fully articulated, sound reasoning for the conclusion . . . that contributes probative value to a medical opinion."[89] Additionally, medical examinations must comply with this Court's decision in *Correia*. There, the Court held that for a VA joints examination to be adequate, the examination must "include the results of range of motion testing described in the final sentence of [38 C.F.R.] § 4.59."[90] Section 4.59 requires that the "joints involved should be tested for pain on both active and passive motion, in weight-bearing and non[-]weight-bearing and, if possible, with the range of the opposite undamaged joint."[91] When the examiner is "unable to conduct the required testing or concludes that the required testing is not necessary, . . . he or she should clearly explain why that is so."[92]

On remand, should the Board continue to rely on the November 2019 VA medical examination, it must specifically address whether the examination is adequate for adjudication purposes, including whether it fails to comply with *Correia*. In that regard, the examiner stated that "where possible," appellant's knees "were assessed for both weight[-]bearing and non[-]weight[-]bearing testing," noting that pain was present during portions of the examination.[93] The examiner does not indicate whether the range-of-motion measurements were obtained in a weightbearing position, nor does she specify where appellant's pain sets in during the range-of-motion test.[94] Additionally, the Board must address the fact that the examiner applied the tests "where possible" and does not explain why the tests could not be performed in certain situations.[95] If the Board determines that the examination is adequate, it must provide a full statement of its

---

[88] *D'Aries*, 22 Vet.App. at 104 (internal quotations omitted).

[89] *Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 304 (2008).

[90] *Correia*, 28 Vet.App. at 169-70.

[91] 38 C.F.R. § 4.59 (2021).

[92] *Correia*, 28 Vet.App. at 170.

[93] R. at 64.

[94] *Id*.

[95] *See Correia*, 28 Vet.App. at 170.

reasons for such a determination sufficient to allow a reviewing court to engage in judicial review. If the Board determines that the examination is not adequate, the Board must obtain a new medical examination.

*C. Appellant's Rights on Remand*

Because the Court is remanding this matter to the Board for readjudication, the Court need not address any remaining arguments now, and appellant can present them to the Board.[96] On remand, appellant may submit additional evidence and argument and has 90 days to do so from the date of VA's postremand notice.[97] The Board must consider any such additional evidence or argument submitted.[98] The Board must also proceed expeditiously.[99]

## IV. CONCLUSION

After consideration of the parties' briefs, the governing law, and the record, the Court REVERSES the Board's determination that appellant is categorically precluded from obtaining a separate disability rating under DC 5257; we SET ASIDE the August 27, 2020, Board decision and REMAND this matter for further proceedings consistent with this decision.

---

[96] *Best v. Principi*, 15 Vet.App. 18, 20 (2001).

[97] *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see also Clark v. O'Rourke*, 30 Vet.App. 92 (2018).

[98] *Kay v. Principi*, 16 Vet.App. 529, 534 (2002).

[99] 38 U.S.C. §§ 5109B, 7112.