# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-1411

CARMEN L. ENCARNACION, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 27, 2022                     Decided January 30, 2023)

*Julia N. Gieseking*, of Grosse Pointe, Michigan, with whom *Victoria R. Tamayo*, of Largo, Florida, was on the brief, for the appellant.

*Amanda Radke*, with whom *Richard A. Sauber*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Drew A. Silow*, Deputy Chief Counsel; and *Lisa McCrea*, were on the brief, all of Washington, D.C., for the appellee.

Before TOTH, FALVEY, and JAQUITH, *Judges*.

TOTH, *Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed a concurring opinion.

TOTH, *Judge*: Carmen L. Encarnacion, surviving spouse of Army veteran Idilio R. Aparicio, appeals a Board decision that dismissed the veteran's claim for a higher rating for a right knee condition. The Board concluded that it lacked jurisdiction to consider the Notice of Disagreement (NOD) because it sought to challenge the implementation of a 2018 Board decision by the agency of original jurisdiction (AOJ). The Board's conclusion about the nature of the AOJ's action was correct: an AOJ does not issue a "decision" of the Secretary affecting the provision of benefits under 38 U.S.C. § 511 when it implements a Board decision without independently resolving any issue. Such actions are ministerial rather than adjudicative in nature. So, it is not possible to appeal a pure implementation of a grant of benefits; there is technically no "decision" to appeal.

But that's not the end of the matter. Because an attempt to appeal such an implementation can be read as a request for the Board to reconsider its earlier decision, the Board must determine whether such a submission constitutes a timely motion for reconsideration. The Board has a duty to read pro se filings sympathetically and it failed to do so here. The Court remands with

instructions for the Board to consider whether Ms. Encarnacion's submission is construable as a motion to reconsider its earlier ruling.

## I. BACKGROUND

This case carries a long and complex procedural history that we'll attempt to simplify. It began in 2009 when the now-deceased veteran filed an informal claim for benefits, including a request to reopen a previously denied compensation claim for a right knee condition.[1] With relative speed, VA reopened the claim, granted service connection, and assigned a 10% rating with an October 14, 2009, effective date. The veteran appealed to the Board, seeking a higher rating and an earlier effective date, but passed away while awaiting a decision.

Shortly after his death, Ms. Encarnacion filed two claims—one for dependency and indemnity compensation (alleging that the veteran's death was service connected) and one for accrued benefits (seeking substitution and the right to continue pursuing any pending claims). "Although it does not appear that a formal determination was made, by the AOJ's actions it is clear [it] approved her request to substitute and afforded her the appropriate notice rights." Record (R.) at 182. Since Ms. Encarnacion filed the claims in 2011, the Board addressed the right knee claim five times, dismissing it, remanding it, and finally deciding it. This appeal centers on the Board's May 2018 decision, which adjudicated the merits of the claim.

In that decision, the Board granted an initial rating of 10%, but no higher, for right knee limitation of flexion. It attached a notice of appellate rights, which informed Ms. Encarnacion that she need not do anything if she was satisfied with the outcome of her appeal and that her "local VA office [would] implement the Board's decision." R. at 214. The notice further advised that, if dissatisfied, Ms. Encarnacion could (1) appeal to this Court, (2) file a motion for reconsideration of the Board's decision, (3) file a motion to vacate the Board's decision, or (4) file a motion to revise the Board's decision based on clear and unmistakable error.

About a month later, the AOJ implemented the Board's decision as to the right knee rating. It notified Ms. Encarnacion of this on June 14, 2018. R. at 125-27. Just over a month after that, on July 18, she filed an NOD as to the AOJ's implementation, but only with regard to the rating issue. This prompted two somewhat inconsistent responses from the Agency. On September 20, it issued

---

[1] While the veteran had over 10 matters pending before the Agency at the time he passed away, only the right knee claim is at issue in this appeal.

a Statement of the Case on the merits of the right knee rating claim; on September 21, it sent Ms. Encarnacion a letter rejecting the appeal of the June 2018 AOJ action because that action simply implemented the Board's May 2018 decision. The September 21 letter also informed her that she had "120 days from the date this [Board] decision was mailed . . . to file a Notice of Appeal" with this Court. R. at 96.

Ms. Encarnacion responded to the September 20 Statement of the Case by filing a Substantive Appeal to the Board; she did not respond to VA's letter informing her that it could not accept her NOD. Thereafter, VA responded to Ms. Encarnacion's Substantive Appeal by certifying her case to the Board and issuing another Board decision on the merits of the right knee rating claim. She appealed that Board decision to the Court, and her appeal was terminated by way of a joint motion for partial remand. In the joint motion, Ms. Encarnacion and the Secretary agreed that "the Board erred by addressing the merits of the increased rating claim before determining whether the [AOJ] properly found that it could not accept [the] July 2018 NOD." R. at 24.

At this point, we cannot proceed without commenting on the questionable utility to Ms. Encarnacion of the joint motion to remand the case. Instead of challenging whether the Board's denial of the increased rating was proper, the appellant agreed with the Secretary to a remand for the Board to decide whether it had the authority to make any ruling in the first place. The only possible outcomes were either dismissal of the appeal for lack of jurisdiction or an affirmation of jurisdiction but with a substantial delay in the resolution of any appealed issue. How any of this tactical jockeying could benefit Ms. Encarnacion remains a mystery to us.

On remand, in its June 2020 decision on appeal, the Board reasoned that it lacked jurisdiction because an appellant "may not challenge the merits of a Board decision by expressing disagreement with" the AOJ's implementation. R. at 4. Although the AOJ had erroneously issued the September 2018 Statement of the Case with respect to the increased rating issue and subsequently allowed the appeal to be returned to the appellate docket, the Board concluded that "the law prohibits an NOD with respect to this type of implementation" and that the Board had "no jurisdiction to address an issue without a valid NOD." R. at 5. In its decision, however, the Board did not address whether the NOD should have been sympathetically construed as a motion for the Board to reconsider its May 2018 decision.

3

## II. ANALYSIS

Ms. Encarnacion argues that the Board erred in not accepting her NOD that sought to appeal the Agency's implementation of the Board's earlier decision. For his part, the Secretary defends the Board's decision to disclaim jurisdiction on grounds that a pure implementation cannot be appealed.

"It is well settled that the Court has jurisdiction to determine whether the Board had jurisdiction to take the action it takes in a decision." *Young v. Shinseki*, 25 Vet.App. 201, 203 (2012) (en banc). To that end, "the Court exercises de novo review over Board determinations that are critical to its jurisdiction." *Evans v. Shinseki*, 25 Vet.App. 7, 10 (2011). The Court must decide whether an implementing action of the sort at issue here can be appealed and thus whether the Board erred in finding it lacked jurisdiction. Two provisions, 38 U.S.C. §§ 511 and 7104(a), govern the jurisdictional question. Section 511 sets out the bounds of the subject matter within the Secretary's jurisdiction; section 7104(a), in turn, establishes that the Board's jurisdiction is derivative of the Secretary's.

We begin with the Secretary's jurisdiction. Under section 511(a), the Secretary "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." A "decision" is a "judicial or agency determination after consideration of the facts and the law." BLACK'S LAW DICTIONARY 511 (11th ed. 2019). Clearly, an action that does nothing more than implement a grant of benefits already determined by another agency department falls outside the definition of "decision" because it lacks the requisite assessment of legal or factual issues. Such action is ministerial rather than adjudicative in nature; it merely effectuates an earlier judgment and leaves no room during implementation for choice or discretion. *See Griffin v. Sec'y of Veterans Affairs*, 288 F.3d 1309, 1323–24 (Fed. Cir. 2002); *see also Love v. McDonough*, 35 Vet.App. 336, 346 (2022) (noting the parties' agreement that issuing payment at a post-discontinuance disability rate is not a "decision" under section 511(a) but a ministerial act simply giving effect to an earlier discontinuance decision).

Section 7104 provides that the Board's jurisdiction is wholly derivative of the Secretary's. Specifically, it establishes that "[a]ll questions in a matter . . . under a section 511(a) of this title . . . shall be subject to *one review* on appeal to the Secretary," and "[f]inal decisions on such appeals shall be made by the Board." 38 U.S.C. § 7104(a) (emphasis added). Ultimately, the Board's

decision is deemed the "final and conclusive" determination of the Secretary as to any discrete issue decided therein. 38 U.S.C. § 511(a).

Taken together, these statutory provisions show that the pure implementation of a Board adjudication cannot be regarded as a decision "affect[ing] the provision of benefits" under section 511(a) and so cannot be appealed to the Board, which has already rendered the Secretary's final determination on the matter.[2]

There are important exceptions to the finality of a Board decision. First, a claimant can file a Notice of Appeal within 120 days of the Board's decision to seek review in this Court. 38 U.S.C. §§ 7252(a), 7266. Alternatively, under 38 U.S.C. § 7103(a), a claimant can at any time request that the Board reconsider its decision. Finally, a claimant can file a motion with the Board to revise its decision on grounds that it was the product of clear and unmistakable error. 38 U.S.C. § 7111. As a notable caveat, a critical qualification on the right to file motions to reconsider or revise is that the underlying Board decision being challenged has not been reviewed and affirmed in relevant part by this Court. *See Disabled Am. Veterans v. Gober*, 234 F.3d 682, 693 (Fed. Cir. 2000) (observing that, when this Court affirms a Board decision as to a specific issue, this Court's decision replaces the Board decision and there is no longer any Board decision subject to revision or reconsideration).

There is, however, no avenue to avoid finality by appealing to the Board the AOJ's implementation of a decision already made by the Board. Such an appeal does not abrogate the finality of a Board decision. Here, the implementation of the Board decision by the AOJ was accompanied by no new findings of fact or law that could affect the award of disability benefits. The Board had already granted service connection and resolved the proper rating and effective date. Even more importantly, the AOJ couldn't render new findings on factual or legal issues already determined by the Board because that would place the AOJ in the untenable position of reviewing the decision of a superior tribunal on those matters. *See Donovan v. Gober*, 10 Vet.App.

---

[2] We have used the word "pure" to describe an implementation in which the AOJ need not make any further determinations for an award of benefits to take effect. Of course, there are frequently instances where implementation *does* require the AOJ to make additional determinations. The most obvious example is when a Board decision simply grants service connection and, to implement that award, the AOJ must for the first time determine the proper disability rating and effective date. In those circumstances, the AOJ does issue a "decision" that is appealable. *Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997). This opinion does not pertain to what might be called "mixed" implementation decisions, which ministerially implement a grant of service connection but adjudicate the "previously undecided," "down-stream" rating and effective date issues. *Id.*

404, 409 (1997). In sum, the AOJ's purely ministerial implementation of the Board's judgment was not a "decision" of the Secretary and thus could not be appealed through the filing of an NOD.

The appellant nonetheless maintains that VA waived any objection to this jurisdictional defect because VA continued to adjudicate the claim by issuing the 2018 Statement of the Case and transferring the appeal to the Board. But this misunderstands the nature of jurisdiction and waiver: Only the violation of mandatory claims-processing rules can be waived. But here, without a "decision" under section 511, there is simply nothing to review. A decision is required to confer jurisdiction, and there is no action the Agency can perform to cure a lack of jurisdiction. *Hall v. McDonough*, 34 Vet.App. 329, 332 (2021) (citing *Henderson ex. rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). There are two sides to the jurisdiction coin. Agencies, like courts, cannot expand their jurisdiction beyond the confines set by Congress. But neither can they walk it back, even slightly, by reading claims-processing rules as imposing limits on jurisdiction.

Significantly, none of this prevents agencies from promulgating mandatory rules that require the dismissal of cases; it only means that such rules have zero effect on jurisdiction—that is, they don't limit the subject matter that an adjudicative body has authority to consider. As relevant here, the AOJ could not, through errant processing, turn an invalid attempt to appeal into a valid one or "confer jurisdiction upon the Board over a claim that the Board was never authorized to hear in the first place." *Braan v. McDonald*, 28 Vet.App. 232, 237 (2016). In sum, the Board was correct that it had no authority to review any implementing action such as the one in this case because the action did not constitute a decision of the Secretary.

Ms. Encarnacion is not without recourse, however, as it is possible to construe her purported NOD as a motion for the Board to reconsider its May 2018 ruling. When a written expression of disagreement with a Board decision is filed with the AOJ during the 120-day period to submit a Notice of Appeal to this Court, "the filing abates finality of the Board decision for purposes of appealing to the Court." *Ratliff v. Shinseki*, 26 Vet.App. 356, 360 (2013). *Ratliff* requires that an AOJ "forward written expressions of disagreement to the Board Chairman, who is to 'determine[] the status of the document, that is, whether it is considered a motion for Board reconsideration or not, and notif[y] the claimant of its determination.'" *Gomez v. McDonald*, 28 Vet.App. 39, 44-45 (2015) (quoting *Ratliff*, 26 Vet.App. at 360). When Ms. Encarnacion's written expression of disagreement was submitted to the AOJ in July 2018, the finality of the May 2018 Board decision was abated, at least for purposes of appealing to this Court, until the Board

Chairman takes the appropriate steps under *Ratliff*. Because the Board should have assessed whether Ms. Encarnacion's July 2018 submission qualifies as a motion to reconsider the Board's decision, we remand for it to do so.

One final matter. Counsel for the appellant attempts to resurrect a seemingly resolved substitution issue. After briefing was complete and prior to oral argument, Ms. Encarnacion obtained new counsel who attempted to raise a new argument about whether she received proper notice regarding her eligibility to substitute into the veteran's claims that were pending when he died. However, the Court declines to address this argument for two related reasons. First, as noted above, the Board found that Ms. Encarnacion's request to substitute was granted by the AOJ. This renders any potential notice argument moot. Second, this Court and the Federal Circuit "have repeatedly discouraged parties from raising arguments that were not presented in an initial brief." *Norvell v. Peake*, 22 Vet.App. 194, 201 (2008). Despite reiterating this warning, we have sometimes—perhaps too many times—gone on to address late-raised arguments anyway. Given the nature and timing of this argument, we will not do so here. The substitution issue is not of jurisdictional import and is therefore deemed waived. *See Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999).

### III. CONCLUSION

The Court VACATES the May 30, 2018, and June 15, 2020, Board decisions and REMANDS for the Board to consider Ms. Encarnacion's July 2018 expression of disagreement in accordance with *Ratliff*. The Court's October 21, 2022, order prohibiting the Board from taking action related to this case while it has been under consideration here is revoked.

JAQUITH, *Judge, concurring*: I concur with all of the Court's opinion except the penultimate paragraph. In my view, the substitution issue is neither moot nor waived—VA's mishandling of it is an important aspect of the tortured history of this case and the spotty record before the Court impedes review of the effect of that mishandling. For example, it is unclear whether Ms. Encarnacion was notified of her right, as a substituted claimant, to a hearing at which VA would "explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position." 38 C.F.R. §

3.103(c) (2011). The Court's remand affords the Board an opportunity to ensure that Ms. Encarnacion's substitution rights were or are protected.

Under 38 U.S.C. § 5121(a), monetary benefits to which a veteran was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death—referred to as "accrued benefits"—are payable to the veteran's spouse. If a veteran dies while he or she has a claim for benefits pending, a person who would be eligible to receive accrued benefits under section 5121(a) may "file a request to be substituted as the claimant for the purposes of processing the claim to completion." 38 U.S.C. § 5121A(a)(1). Even if a surviving spouse submits no specific request to substitute, the spouse's claim for accrued benefits, survivors pension, or dependency and indemnity compensation (DIC) is deemed to include a request to substitute if such a claim was pending before the agency of original jurisdiction or the Board when the claimant died. 38 C.F.R. § 3.1010(c)(2) (2014). Before VA promulgated § 3.1010, it deemed a surviving spouse's claim for accrued benefits as also requesting substitution. *See Reeves v. Shinseki*, 682 F.3d 988, 993 (Fed. Cir. 2012) (noting that VA Fast Letter 10–30 had provided, since August 2010, that "'To request substitution, an eligible survivor may file either a claim for accrued benefits or a request for substitution. Accrued benefits claims and requests for substitution shall be treated as one and the same.'"); *Reliford v. McDonald*, 27 Vet.App. 297, 303 (2015) (noting that Fast Letter 10-30 stated that "'receipt of a VA Form 21–534 will be accepted as both a claim for accrued benefits and a substitution request.'").

The regulation specifically provides that "the agency of original jurisdiction [AOJ] will decide in the first instance all requests to substitute, including any request to substitute in an appeal pending before the Board." 38 C.F.R. § 3.1010(e) (2014); *see* 38 C.F.R. § 20.1302 (2014). The Secretary's determination that the AOJ, rather than the Board, must decide substitution in the first instance "enable[s] a dissatisfied prospective substitute to obtain Board review of the substitution issue on appeal." *Nat'l Org. of Veterans Advocs., Inc. v. Sec'y of Veterans Affs.*, 809 F.3d 1359, 1364 (Fed. Cir. 2016).

Ms. Encarnacion's spouse, Army veteran Idilio Aparicio, tore the anterior cruciate ligament and medial meniscus of his left knee while on active duty in 1970. R. at 2678, 3142. In October 2009, the veteran sought service connection or increased ratings for disabilities of his knees and back and radiculopathy and neuropathy of his arms and legs; he characterized the conditions as "all related" and asked for a compensation and pension (C&P) examination. R. at 2752. In March

2010, a C&P physician opined that the veteran's right knee condition was related to his service-connected left knee condition, reasoning that a "long standing painful degenerative condition [of one knee] commonly causes overloading of the other knee." R. at 2680. In August 2010, the San Juan, Puerto Rico, regional office (RO) granted service connection for lumbar strain and degenerative joint disease, rated at 40%; for right knee degenerative joint disease, rated at 10%; and for left knee radiculopathy, rated at 0%—all effective in October 2009—but denied several other claims. R. at 2595-96. The veteran submitted a statement in September 2010 disagreeing with the ratings, effective dates, and denials of service connection. R. at 2576. A March 2011 Statement of the Case (SOC) reaffirmed the RO decisions. R. at 2539-50. Four days after the SOC, the veteran filed a VA Form 9 appealing all issues. R. at 2489. Although the block indicating that he did not want a Board hearing was checked, the veteran specified: "Please continue my appeal procedure and schedule a hearing as soon as possible." R. at 2489.

The veteran died in Puerto Rico on October 25, 2011. R. at 2363-64, 2408-09. The causes of death were listed as a myocardial infarction, arterial hypertension, and a cerebral tumor. R. at 2363. The appellant submitted a statement on November 2, 2011, advising VA of the veteran's death and asking that VA "evaluate for DIC benefits and continue his appeal for accrued benefits." R. at 2427. Later in November 2011, the appellant submitted a VA Form 21-534, Application for Dependency and Indemnity Compensation, Death Pension and Accrued Benefits, indicating that she and the veteran had married in July 1983, had two children, and remained married and lived together continuously until the veteran's death, and that she had paid $3,000 in burial expenses. R. at 2365-72.

VA denied the appellant's DIC claim. R. at 2236. In June 2014, less than two weeks after she received notice of the denial, the appellant submitted a statement disagreeing with it, emphasizing that the veteran's service-connected conditions "contributed substantially to his cause of death" and that she was claiming accrued benefits and a total disability rating for her deceased spouse based upon individual unemployability. R. at 2236. The Philadelphia RO replied that it could not accept the appellant's statement as a Notice of Disagreement (NOD) regarding denial of DIC because she already had an appeal pending for that issue at the San Juan RO. R. at 2225. The appellant forwarded the reply by the Philadelphia RO to the San Juan RO in September 2014 and asked for the SOC or review of the case and a new decision. R. at 2219.

9

Notwithstanding Fast Letter 10-30 and then § 3.1010(c)(2), there is no evidence that either RO addressed the substitution issue at all. And that failure had consequences. A surviving spouse who submits no specific request to substitute but rather a claim for accrued benefits, a survivors pension, or DIC—which is deemed to include a request to substitute—"may waive the right to substitute in writing." 38 C.F.R. § 3.1010(c)(2) (2014). In violation of VA's established procedure, Ms. Encarnacion was not notified of her right to substitute or of her right to waive the opportunity to substitute. *See Reliford*, 27 Vet.App. at 303-04.

Pursuant to section 5121, a surviving spouse's claim for accrued benefits is separate and distinct from the deceased veteran's underlying claim. *Id.* at 301. An accrued-benefits claim "is relegated to the beginning of the process, generally behind other pending claims, regardless of where the underlying claim had been in the appeals process." *Id.* And "whether accrued benefits should be awarded 'must be determined based on evidence that was either physically or constructively in the [deceased claimant's] file at the time of his death.'" *Id.* at 301-02 (alteration in original) (quoting *Ralston v. West*, 13 Vet.App. 108, 113 (1999)).

In contrast, section 5121A enables the surviving spouse to proceed in the place of the deceased veteran to the completion of the claim (for purposes of accrued benefits) and the substituted spouse is "afforded the ability to further develop the record, including via the Secretary's duty to assist." *Reliford*, 27 Vet.App. at 302.

Even though section 5121A thus appears to be more favorable for claimants, the choice is theirs. *Id.* at 304. Failing to notify Ms. Encarnacion that she could waive substitution constitutes error. *See id.* Moreover, because the AOJ did not address substitution at all, it did not provide "notice in accordance with § 3.103(b)(1)"—including the substitute's right to a hearing—as § 3.1010(e)(1) required.

The Board recognized that the AOJ was responsible for adjudicating substitution and twice tried to get the AOJ to do so. In May 2016, the Board dismissed the veteran's appeal because he had died before the Board issued a decision. R. at 1844. The Board noted—in bold letters—that the appellant had submitted a statement and an NOD "that could be construed as a request to be substituted as the appellant in this case," and that the issue of whether she might be substituted "has not been specifically adjudicated by the AOJ," so the Board declared that the issue of whether Ms. Encarnacion may be substituted "is referred to the AOJ for appropriate action." R. at 1844. The Board simultaneously remanded Ms. Encarnacion's appeal for the RO to issue an SOC "as to

10

the issue of entitlement to accrued benefits," obtain treatment records, Social Security records, the veteran's official military personnel file, and a medical opinion regarding whether the veteran's service-connected disabilities "contributed significantly or materially to cause his death," and whether the causes of his death began in service or the year immediately following service or were related to service. R. at 1835-39.

In September 2017, the Board found that the medical opinions regarding the cause of the veteran's death were inadequate, that the appellant could "continue the claim on appeal" on behalf of the veteran, that the appellant's DIC claim "encompasse[d] a claim to substitute," and that there was confusion over the May 2016 Board decisions "given the apparent absence of any notice sent to the appellant as to how she may pursue" her claims for accrued benefits. R. at 285-87. The Board remanded the case for the RO (1) to provide the appellant "with the appropriate notice, informing her as to what evidence she may submit to substantiate the claims on appeal" and provide her "an adequate amount of time to submit any additional evidence," and (2) to refer the appellant's claims file to another VA physician "to review and provide opinions as to the cause of the Veteran's death." R. at 287.

In May 2018, the Board observed, for a third time, that the AOJ had not determined whether the appellant was a valid substitute. R. at 182. The Board decided to overlook the regulatory requirement without even acknowledging it, saying only this: "Although it does not appear that a formal determination was made, by the AOJ's actions it is clear they approved her request to substitute and afforded her the appropriate notice rights. *See* December 2017 letter." *Id.* But the Board's decision to abandon its insistence on regulatory compliance did not dispel the confusion it had found 8 months earlier. First, the Board began the paragraph giving up on its prior determinations by mistakenly describing its prior remands as occurring in May 2015 and September 2016. R. at 181-82. Those remands occurred in May 2016 and September 2017—unless there were two additional remands not included in the record that were similar to the two that were included. *See* R. at 283-89 (September 2017), 1830-40 (May 2016). Second, the contents of the December 2017 letter the Board cited were not spelled out and the parties did not include it in the record before the Court.

The appellant contended that the December 2017 Agency letter still did not include any substitution determination—as the Board acknowledged, R. at 182—and that the absence of that determination deprives the Board of jurisdiction. Though the Board concluded otherwise in May

11

2018, asserting that it had jurisdiction, R. at 182, in September 2017 the Board had said, "Jurisdiction of this matter currently resides with the San Juan, Puerto Rico RO." R. at 285. And in May 2016, the Board dismissed the veteran's appeal for lack of jurisdiction, citing § 20.1302. R. at 1845. Section 20.1302 provides both for dismissal of a veteran's appeal pending before the Board when the veteran dies and for the substitution determination by the AOJ. Moreover, as the appellant has highlighted, VA declared in its notice of its proposal to add § 3.1010 and amend § 20.1302 that "the Board lacks original jurisdiction to decide a request to substitute in the first instance." *Substitution in Case of Death of Claimant*, 76 Fed. Reg. 8666-01, 8667 (Feb. 15, 2011). On the other hand, the appellant's counsel seemed to concede at oral argument that the substitution rules are not truly jurisdictional, but argued that the AOJ's failure to address substitution means the issue is still pending. Oral Argument (OA) 3:24-43, 11:06-35, 16:27-18:25, *Encarnacion v. McDonough*, U.S. Vet. App. No. 21-1411 (held Oct. 27, 2022), https://www.youtube.com/watch?v=F3kCvKwo9nQ.

It is not clear to me whether my colleagues' statement that "[t]he substitution issue is not of jurisdictional import" means they have concluded that VA was wrong in saying otherwise because the substitution rules are claims processing ones, or just that the Board's finding that Ms. Encarnacion's (deemed) request to substitute was implicitly granted by the AOJ resolves any jurisdictional question. Either way, I would not find the substitution argument waived by the appellant under the circumstances here, where the counsel change apparently was a consequence of oral argument being scheduled to be heard at Syracuse University College of Law, appellant's new counsel raised the substitution issue 3 weeks after entering her appearance, and we expressly included the issue in those for discussion at oral argument. However, the irregular initiation of the argument, in both timing and form—in a "*Solze* notice," *see Solze v. Shinseki*, 26 Vet.App. 299, 301 (2013), rather than regular briefing—did impede its development. *See Page v. McDonough*, 35 Vet.App. 94, 97 n.3 (2022). And the muddled record leaves open to debate whether the error in addressing substitution was harmless or prejudicial to the appellant. *See Tadlock v. McDonough*, 5 F.4th 1327, 1337-38 (Fed. Cir. 2021).

At oral argument, appellant's counsel asked how Ms. Encarnacion, who is elderly, primarily speaks Spanish, and was unrepresented below, was supposed to understand what her rights were, in light of the mixed messages she received from VA (regarding rating decisions being made on a record that closed at the time of her husband's death and whether she could submit new

12

evidence), the lack of notice, the nuances of sections 5121 and 5121A, the length of time it took to process her claim, and the impact of hurricanes in Puerto Rico on her financial situation. OA 5:22-43, 10:41-11:00, 17:09-55, 47:23-49:49. And appellant's counsel argued that the December 2017 letter did not include notice of the appellant's right to a hearing and afforded only 30 days to submit evidence. OA 5:34-43, 47:55-48:08. The record before the Court does not include that letter—or a reasonable answer to the question of how Ms. Encarnacion was supposed to understand what her rights were. The appellant did, in October 2018, indicate that she did not want a Board hearing. R. at 70. But that does not address the preceding 7-year broken road from the date of the appellant's claim and (deemed) substitution request.

The Court's remand for the Board to determine whether the appellant's July 2018 NOD should be construed as a motion for reconsideration of the May 2018 Board ruling affords the Board another opportunity to clean this up. The Board should ensure that the appellant's substitution rights are protected and she is afforded a meaningful opportunity to develop the record, including through the Secretary's duty to assist, a hearing, and time to submit evidence, all so the error in failing to do so beginning in November 2011 is not prejudicial.