NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DAVID L. JOHNSON,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2024-1898

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 22-4199, Judge Scott Laurer.

---

Decided:  January 29, 2026

---

CHRISTOPHER GLENN MURRAY, National Veterans Legal Services Program, Arlington, VA, argued for claimant-appellant.  Also represented by RENEE A. BURBANK, STACY A. TROMBLE, CHRISTOPHER WALLACE.

AN HOANG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY;  CHRISTINA LYNN GREGG, BRIAN D. GRIFFIN,

Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before LOURIE, PROST, and CUNNINGHAM, *Circuit Judges.*

PROST, *Circuit Judge.*

David L. Johnson appeals from a decision of the U.S. Court of Appeals for Veterans Claims ("Veterans Court"), affirming the denial of restoration of his forty-percent rating for residuals of a right-ankle ligament tear and left-ankle sprain. *See Johnson v. McDonough*, No. 22-4199, 2023 WL 8108368 (Vet. App. Nov. 22, 2023) ("*Decision*"). For the following reasons, we affirm in part and dismiss in part.

## BACKGROUND

Mr. Johnson served honorably in the U.S. Marine Corps from November 25, 1961 to May 24, 1962. During his service, Mr. Johnson suffered a ligament tear in his right ankle. In 2011, Mr. Johnson applied to the Department of Veterans Affairs ("VA") for service-connected disability benefits for his right-ankle disability and subsequently applied for disability benefits associated with his left ankle. In examinations conducted in February and July 2012, VA examiners noted ankylosis in both of Mr. Johnson's ankles and, consequently, rated each of his service-connected ankle disabilities at forty percent.

In September 2012, Mr. Johnson sought an increase in compensation based on unemployability. A VA examiner found, during a January 2013 examination, that Mr. Johnson did not present ankylosis in either ankle, but the examiner later opined, in February 2013, that the prior ankylosis diagnoses were supported by the original finding that dorsiflexion stopped at ten degrees. In October 2013, a new examiner also found no ankylosis in either ankle. The VA regional office proposed that Mr. Johnson's ratings be reduced from forty percent to twenty percent as the

examiners should not have indicated that either of Mr. Johnson's ankles had ankylosis. J.A. 338, 340. Despite originally deciding to challenge the proposed reduction, Mr. Johnson instead opted for another medical examination, which occurred in May 2015 and also found no ankylosis in either ankle. In November 2015, the regional office reduced Mr. Johnson's rating to twenty percent for both ankles effective February 1, 2016.

After Mr. Johnson appealed, the Board of Veterans' Appeals ("Board") remanded for the VA "to obtain imaging and a medical opinion as to whether [Mr. Johnson] has, or ever had, ankylosis." J.A. 265. Mr. Johnson's case then volleyed between the Board and the VA regional office for years. During this time, Mr. Johnson underwent at least four additional examinations, which each separately indicated that he did not have ankylosis in either ankle.

In March 2022, the Board ultimately denied Mr. Johnson's request for restoration of his forty-percent rating. The Board found that "[t]he rating reductions for the service connected ankle disabilities were based on clinical evidence establishing that an improvement in these disabilities had actually occurred and resulted in an improvement in [Mr. Johnson's] ability to function under the ordinary conditions of life." J.A. 106. Specifically, "the findings of there being no ankylosis at the VA examinations conducted in January 2013, October 2013, and May 2015—as confirmed by subsequent VA examinations of the ankles—warranted the reduction in the [forty-percent] ratings." J.A. 112.

On appeal before the Veterans Court, Mr. Johnson argued that the Board's decision was void because it relied on the January 2013, October 2013, and May 2015 VA examinations. According to Mr. Johnson, these examinations were inadequate for failing to consider functional loss over time or pain during both active and passive range of motion in weight-bearing and non-weight-bearing positions.

Mr. Johnson also contended that the Board failed to make all findings necessary for upholding his rating reduction. To reduce his rating, Mr. Johnson maintained, the Board needed to find that his ankylosis actually improved under the ordinary conditions of life *and work*, but the Board failed to address whether the ankylosis improved under the ordinary conditions of work.

The Veterans Court affirmed the Board's decision and rejected Mr. Johnson's contention that the Board relied on inadequate examinations. *Decision*, 2023 WL 8108368, at *3, *5. It observed that "the standard for assessing the adequacy of an exam is whether it can adequately inform the Board's decision making" and determined that, here, the contested exams "gave the Board enough information to assess whether his ankylosis had improved." *Id.* at *3. Specifically, the Veterans Court noted that all three examiners found that Mr. Johnson did not have ankylosis and measured his range of motion including during flare-ups, which supported the finding that Mr. Johnson did not have functional ankylosis. *Id.*

Additionally, the Veterans Court rejected Mr. Johnson's argument that the Board failed to make all necessary findings. *Id.* at *4. Specifically, the Veterans Court concluded that the weight of the evidence supported the Board's conclusion "that [Mr. Johnson's] ankylosis—a legal reality if not a medical one—had improved." *Id.* Moreover, the Veterans Court noted that Mr. Johnson had not worked "since 2009, well before this litigation began, so there were no relevant work conditions for the Board to analyze." *Id.* (cleaned up). The Veterans Court thus concluded that the Board correctly articulated the standard governing rating reductions and correctly "limited its discussion to the evidence of record." *Id.*

Mr. Johnson filed a motion for reconsideration or, alternatively, a panel decision. The Veterans Court denied the motion for reconsideration. While the Veterans Court

granted the motion for a panel decision, the panel ordered that the single-judge decision remain the Veterans Court's final decision.

Mr. Johnson timely appealed.  Our jurisdiction over appeals from the Veterans Court is governed by 38 U.S.C. § 7292.

## DISCUSSION

### I

Mr. Johnson argues that the Veterans Court upheld the reduction of his ankle-disability ratings based on an incorrect interpretation of the term "actual change" in 38 C.F.R. § 4.13.  That regulation requires the Secretary to show "an actual change in the [veteran's] conditions, for better or worse."[1]  In support of his argument, Mr. Johnson

---

[1]    The regulation, in full, provides:

The repercussion upon a current rating of service connection when change is made of a previously assigned diagnosis or etiology must be kept in mind. The aim should be the reconciliation and continuance of the diagnosis or etiology upon which service connection for the disability had been granted.  The relevant principle enunciated in § 4.125, entitled "Diagnosis of mental disorders," should have careful attention in this connection.  *When any change in evaluation is to be made, the rating agency should assure itself that there has been an actual change in the conditions, for better or worse*, and not merely a difference in thoroughness of the examination or in use of descriptive terms.  This will not, of course, preclude the correction of erroneous ratings, nor will it preclude assignment of a rating in conformity with § 4.7.

highlights (1) the Veterans Court's suggestion that the "initial examiners marked ankylosis in error" and (2) its reasoning that, "*even if the initial examiners had noted ankylosis correctly*," the evidence supported the Board's finding that his condition had improved. *See Decision*, 2023 WL 8108368, at \*3 (emphasis added). We understand Mr. Johnson to argue that the Veterans Court could not uphold a finding of an "actual change" simply by *assuming* the correctness (or lack of error in) the initial diagnoses. *See* Appellant's Br. 12–13 ("[T]he Veterans Court created a legal fiction that Mr. Johnson did have ankylosis at the time he was awarded the separate [forty-]percent ratings so that the later absence of ankylosis represented an improvement in the ankle disabilities.").

At bottom, Mr. Johnson's regulatory-interpretation argument for why there was no "actual change" requires disturbing the fact findings underlying the initial diagnoses of ankylosis (and the earlier forty-percent rating). Put differently: if those fact findings were *not* disturbed—such that the earlier diagnoses and rating were treated as a settled factual matter—then Mr. Johnson could not maintain his argument that the Veterans Court erroneously upheld his rating reduction in the absence of a showing of an actual change in his condition. Yet the Board did not disturb those fact findings. Nor did the Veterans Court. Because we generally "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case," 38 U.S.C. § 7292(d)(2), and because Mr. Johnson's regulatory-interpretation argument depends on disturbing a factual determination adhered to by both the Board and the Veterans Court, we conclude that we lack jurisdiction to consider

---

38 C.F.R. § 4.13 (emphasis added).

this argument and thus dismiss Mr. Johnson's challenge in this regard.

## II

Mr. Johnson also alleges that the Veterans Court exceeded the scope of its jurisdictional statute by engaging in de novo factfinding. For example, Mr. Johnson contends that VA regulations require testing for pain on active and passive range of motion and both weight-bearing and non-weight-bearing positions. Appellant's Br. 20 (citing 38 C.F.R. § 4.59). Mr. Johnson contends that none of the three pre-reduction examinations addressed both active and passive motion or both weight-bearing and non-weight-bearing positions. The Board did not analyze these deficiencies, Mr. Johnson contends, but the Veterans Court nevertheless concluded that the pre-reduction examinations provided the Board with enough information to assess whether Mr. Johnson's ankylosis improved.

In response, the Secretary argues that the Veterans Court did not make fact findings in the first instance but merely reviewed the Board's findings that the examinations were adequate.

We agree with the Secretary; the Veterans Court did not find facts in the first instance. Whether the Veterans Court exceeded its jurisdiction is a legal question that this court has jurisdiction to review. *Tadlock v. McDonough*, 5 F.4th 1327, 1332–33 (Fed. Cir. 2021). Such review includes determining whether the Veterans Court exceeded its authority by engaging in de novo factfinding. *Tadlock*, 5 F.4th at 1332–33. Here, the Board recognized that "if the VA examination report justifying the rating reduction is inadequate, the reduction cannot be upheld." J.A. 109. The Board then concluded that there was "no evidence of clinical or functional ankylosis in either ankle on any other clinical report after the February and July 2012 VA examinations" and that "the VA examinations conducted in January 2013, October 2013, and May 2015 . . . warranted

the reduction in [Mr. Johnson's] ratings." J.A. 112. Thus, the Board determined that the pre-reduction examinations were adequate to support the reduction in Mr. Johnson's rating. The Veterans Court's subsequent assessment of the adequacy of the examinations to support a conclusion that Mr. Johnson did not suffer from functional ankylosis therefore reflects the proper exercise of appellate review of factual determinations, rather than fact finding in the first instance.

Mr. Johnson also alleges that the Board made no findings regarding whether the improvements in Mr. Johnson's ankle disabilities reflected improved functioning in the ordinary conditions of work and, thus, the Veterans Court exceeded its jurisdiction by determining that "there were no relevant work conditions for the Board to analyze." Appellant's Br. 23.

We disagree. The Veterans Court recognized, as did the Board, that Mr. Johnson had not worked since 2009, well before Mr. Johnson's initial ankylosis diagnosis. As a result, the Veterans Court concluded that the Board appropriately confined its analysis to the issues implicated by the evidence of record. *Decision*, 2023 WL 8108368, at \*4. This conclusion by the Veterans Court is not a *factual finding*. For example, the Veterans Court did not determine that Mr. Johnson's ankylosis in fact improved under the ordinary conditions of work. Instead, the Veterans Court's decision indicates that the relevant standard did not require the Board to speculate as to whether Mr. Johnson's ankylosis improved under conditions that were not implicated by the facts of the case. *See id.* (concluding that "[t]he [Veterans] Court can't imagine what the Board could or should have said about the work conditions of a veteran who has been unemployed for the span of his appeal beyond addressing his holistic ability to function" and, thus, "the Board decision adequately analyzed [Mr. Johnson's] improved ability to function under the ordinary conditions of life and work *given his circumstances*" (emphasis added)).

Accordingly, Mr. Johnson's arguments that the Veterans Court exceeded its jurisdiction lack merit. We therefore affirm the jurisdictional assessment underlying the Veterans Court's decision.

## CONCLUSION

We have considered Mr. Johnson's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm in part and dismiss in part.

**AFFIRMED-IN-PART AND DISMISSED-IN-PART**

## COSTS

No costs.